



**OPINION**

No. 04-09-00232-CV

**SOUTHWEST OLSHAN FOUNDATION REPAIR COMPANY, LLC.**,
d/b/a Olshan Foundation Repair Company,
Appellant

v.

Nelda **GONZALES**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-08787
Honorable Larry Noll, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebecca Simmons, Justice

Delivered and Filed: January 19, 2011

REVERSED AND RENDERED

        This is an appeal from a jury verdict in favor of appellee, the plaintiff below, Nelda Gonzales.

Appellant, the defendant below, Southwest Olshan Foundation Repair Co. ("Olshan") raises six

issues on appeal: (1) there is no implied warranty because Olshan provided an express warranty; (2)

---

        [1] The Honorable David Berchelmann is the presiding judge of the 37th Judicial District Court of Bexar County. However, the Honorable Larry Noll, presiding judge of the 407th Judicial District Court of Bexar County, presided over the trial and signed the judgment at issue in this appeal.

recovery is barred by limitations; (3) there is no evidence of reasonable cost of repairs, that physical damage to Nelda's house was caused by a construction defect, or of misrepresentation or of reliance or damages caused by any misrepresentation; and (4) the trial court should have submitted a jury question on whether Nelda wrongfully prevented Olshan from performing warranty work on the home's foundation. In an opinion and judgment dated April 21, 2010, we reversed the trial court's judgment and rendered judgment in favor of Olshan because we concluded Nelda's DTPA and implied warranty claims are barred by limitations and the evidence in support of her fraud claims is legally insufficient. Nelda filed a motion for rehearing and a motion for en banc reconsideration. To clarify our discussion on the issue of the statute of limitations, we vacate our earlier judgment, withdraw our earlier opinion, and issue this opinion and judgment in their place. Concluding our original analysis was correct, we overrule both motions.

## BACKGROUND

Nelda Gonzales and her former husband purchased their home in 1996. In June 2001, when the Gonzaleses noticed cracking and other problems in the interior and exterior of the house, they filed a claim with their homeowner's insurance company, Allstate Insurance Company. Allstate determined that plumbing leaks caused foundation movement and related damage and paid the Gonzaleses to make repairs.

The Gonzaleses hired Olshan to stabilize the foundation, and Olshan prepared an Agreement, which called for the installation of "cable-locked press [concrete] pilings" and related work. Olshan installed forty-five cable-locked pilings in July 2001. Nelda testified that as a result of Olshan leveling the foundation, cracks appeared throughout the inside of the house. Approximately three

months later, in October 2001, Nelda gutted the home's interior and made significant cosmetic repairs.

The house experienced no other problems until April 2002, when Nelda noticed more cracking and other problems, such as doors and windows sticking. Olshan sent an employee to inspect the house, and he discovered new plumbing leaks under the house. Nelda again contacted her insurance company, and testing revealed more leaks. Nelda signed the test report, which was dated April 24, 2002. The Gonzaleses called Olshan again in October 2002. All-Leak Plumbing and Olshan came to the house in May 2003. Olshan dug tunnels under the house to look for additional leaks, and All-Leak Plumbing repaired the leaks. After All-Leak Plumbing repaired the leaks, Olshan took elevations of the house in July 2003, and returned in August 2003 to dig additional tunnels and re-level the foundation. Nelda testified the Olshan employee who came to the house in August 2003 said "he was out there to fix the mistakes that were done from the previous work." Olshan re-leveled the house, and the City of San Antonio certified the plumbing work as complete. Olshan came out to the house again in October 2003 to re-level the house. Nelda testified the Olshan employee who came to the house in October 2003 told her "they were going to replace what was bad and perform . . . the job."

Nelda also testified that when Olshan dug the tunnels in May 2003, it did not put the dirt back into the tunnels. According to Nelda, Olshan did not replace the dirt when it came out again in July 2003. She said no one told her that leaving the tunnels open would damage her house. However, in October 2003, when Olshan's crew chief told her he wanted to fill in the tunnels, Nelda refused to allow him to do so based on an earlier conversation she had with another Olshan employee. Nelda

testified this employee told her Olshan was "not doing a good job under the house . . . . In fact, it's the worst job I have ever seen." Nelda said he told her not to allow Olshan to replace the dirt because her home had "not been fixed." According to Nelda, he also told her to "find an attorney because your house is messed up." When Nelda relayed this conversation to the Olshan crew chief, he called his office and then told Nelda "we have spent too much time on your home and we have other work to do. We are going to put you on a waiting list for four to six months." When asked on cross-examination whether she was aware in October 2003 of the need to assert any claims against Olshan, Nelda replied that she was told Olshan would be back in four to six months to correct whatever needed to be corrected. In November 2003, an Olshan engineer came to the house for elevation and plumbing leak tests. According to Nelda, Olshan told her "everything was okay." At this time, she believed she was still on the wait-list. Olshan did not come back to the house within the next four to six months.

Nelda's husband filed for divorce in August 2003. Sometime in early 2004, without her knowledge, her husband called Olshan. Olshan came to the house in either January or February of 2004 and told her it was there to fill in the tunnels with dirt. She did not allow them to do so because "they still couldn't show me anything that they had done under the house that they said they were going to fix." In July 2005, Olshan sent BEC Engineering to the house to conduct more tests and, according to Nelda, a BEC Engineering employee said "everything was okay." At some point in time, Nelda retained legal representation. Her attorneys hired Jim Linehan of Linehan Engineering ("Linehan") to inspect the house. In May 2006, Linehan inspected the house and, according to

Nelda, said the "pilings weren't working." Nelda claimed she was not aware of this problem before Linehan's May 2006 report.

Nelda filed suit against Olshan on June 6, 2006 on various causes of action. A jury trial commenced on October 21, 2008. Nelda waived any recovery for breach of contract, and instead, she proceeded to trial on theories of breach of express and implied warranties, fraud, and DTPA violations.

## STATUTE OF LIMITATIONS

Nelda filed suit on June 6, 2006, and she asserted the discovery rule and fraudulent concealment as defenses to limitations. At trial, Nelda testified she was not aware the Olshan pilings were defective until Linehan told her about the problem. The date of Linehan's report was May 18, 2006. The jury determined May 18, 2006 was the accrual date of Nelda's claims for breach of an express warranty, breach of an implied warranty, DTPA violations, and fraud. As to Nelda's fraudulent concealment defense, the jury determined Olshan committed fraud and Olshan knowingly engaged in conduct to deliberately prevent Nelda from filing suit. In its second issue on appeal, Olshan asserts Nelda's DTPA claims, including breach of any implied warranty, are barred by the two-year statute of limitations, and her common law fraud claim is barred by the four-year statute of limitations. Olshan argues the evidence supporting the jury's findings regarding the accrual date is legally and factually insufficient. Because we consider only Olshan's no-evidence challenge, we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

A.      **Applicable Statute of Limitations**

As a threshold issue, the parties disagree over the length of the statute of limitations for Nelda's breach of an implied warranty claim. In her last live pleading Nelda asserted a claim for breach of a common law implied warranty to repair her home in a good and workmanlike manner. She also asserted, under her DTPA cause of action, that Olshan breached an implied warranty that its foundation repairs would be done in a good and workmanlike manner. Olshan asserts the limitations period is two years for all of her implied warranty claims, while Nelda argues the limitations period for her common law implied warranty claim is four years because it is a construction claim.

In *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987), the Texas Supreme Court recognized that "consumers of services do not have the protection of a statutory or common law implied warranty scheme." *Id.* at 353. Thus, the Court considered for the first time "whether the protection of Texas consumers requires the utilization of an implied warranty that repair services of existing tangible goods or property will be performed in a good and workmanlike manner as a matter of public policy." *Id.* After discussing the public policies favoring such a warranty, the Court concluded "that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers suing under the DTPA." *Id.* at 353-54. Although Nelda's petition alleged a claim for breach of a common law implied warranty and a claim for breach of the DTPA implied warranty, "consumers of services do not have the protection of a . . . common law implied warranty scheme." *See id.* at 353. Following *Melody Home*, a claim for such a breach is available under the DTPA. Accordingly, we conclude the

DTPA's two-year statute of limitations applies. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (Vernon 2002) (limitations); *see also Koehler v. Sears, Roebuck & Co.*, No. 05-98-01325-CV, 2001 WL 611453, at *5 (Tex. App.—Dallas June 6, 2001, no pet.) (mem. op.) (holding that "an implied warranty to perform services in a good and workmanlike manner is an action available under the DTPA and is subject to the two-year limitations provided by the DTPA"); *Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 719 (Tex. App.—San Antonio 1998, pet. denied) (holding statute of limitations for DTPA action, including claim for breach of express or implied warranty under the DTPA, is two years); *Foreman v. Pettit Unlimited, Inc.*, 886 S.W.2d 409, 412 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (holding that because "the DTPA is the only way of pursuing an implied warranty claim for repairs to existing tangible goods, such a claim must necessarily be brought within the two-year DTPA limitations period"); *Darr Equip. Co. v. Allen*, 824 S.W.2d 710, 712 (Tex. App.—Amarillo 1992, writ denied) (holding plaintiff had to commence his breach of implied warranty action under the DTPA within two years because "[t]his special statute of limitations denies [plaintiff's] alternative proposal of entitlement to recover for breach of the common law implied warranty). Therefore, we apply the two-year statute of limitations in our analysis of whether Nelda's DTPA claims and breach of implied warranty claim are barred.

**B.      The Discovery Rule and Fraudulent Concealment**

The discovery rule is a limited exception to the statute of limitations. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996). The discovery rule is applied when the nature of the injury is inherently undiscoverable. *Id.* at 456. Thus, the discovery rule should be applied only when it is difficult for the injured party to learn of the negligent act or omission. *Id.*

The DTPA incorporates the discovery rule into the statute, providing that the claim accrues when the "consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565. However, under both the DTPA and common-law causes of action, accrual occurs when the plaintiff knew or should have known through the exercise of reasonable diligence of the wrongful injury. *KPMG Peat Marwick v. Harrison County Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). Therefore, a plaintiff need not know the full extent of the injury before limitations begin to run. *Id.*; *Murphy v. Campbell*, 964 S.W.2d 265, 273 (Tex. 1997).

An injury is inherently undiscoverable if, by its nature, it is unlikely to be discovered within the prescribed limitations period despite the exercise of due diligence. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001). The question is not whether the particular injury was actually discovered by the claimant within the limitations period but whether "it was the type of injury that generally is discoverable by the exercise of reasonable diligence . . . ." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). "[T]he discovery rule does not linger until a claimant learns of actual causes and possible cures." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004). Instead, it tolls limitations only until a claimant learns of a wrongful injury, at which point the limitations clock begins to run even if the claimant does not yet know the specific cause of the injury, the party responsible for it, or the chances of avoiding it. *Id.* at 93-94. Knowledge of facts, conditions, or circumstances that would cause a reasonable person to make inquiry leading to the discovery of the concealed cause of action is equivalent to knowledge of the cause of action for limitation purposes. *Kizer v. Meyer, Lytton, Alen & Whitaker, Inc.*, 228

S.W.3d 384, 389 (Tex. App.—Austin 2007, no pet.) (discussing discovery rule in context of lawsuit over foundation problems); *Haidar v. Nortex Found. Designs, Inc.*, 239 S.W.3d 924, 926 (Tex. App.—Dallas 2007, no pet.) (same).

"Unlike the discovery rule, which determines when the limitations period begins to run, the doctrine of fraudulent concealment suspends the running of the limitations period after it has begun because the defendant concealed facts necessary for the plaintiff to know that a claim existed." *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 493 (Tex. App.—San Antonio 2003, pet. denied). "But the estoppel effect of fraudulent concealment is not permanent." *Id.* "[W]hen a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations . . . begin[s] to run [when] the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick*, 988 S.W.2d at 750. Therefore, knowledge of facts that would make a reasonable person inquire and discover a concealed cause of action is equivalent to knowledge of the cause of action for limitations purposes. *Booker*, 103 S.W.3d at 493.

Olshan argues the evidence conclusively establishes Nelda actually discovered her injury in 2002 or, at the latest, in 2003. According to Olshan, Nelda admitted at trial she "knew something was wrong" with the foundation in April 2002; therefore, her DTPA and implied warranty claims are barred by the two-year statute of limitations and her fraud claim is barred by the four-year statute of limitations. Alternatively, Olshan argues that even if the discovery rule applies and even if Nelda did not notice the April 2002 damage, she was put on notice in the August through October 2003 time period when Nelda alleged an Olshan employee told her the work under her house was not properly done; therefore, her DTPA and implied warranty claims (but not her fraud claim) are barred

by the two-year statute of limitations. Nelda, on the other hand, contends she was not aware the Olshan pilings were defective until Linehan told her about the problem in his May 18, 2006 report.

We conclude Nelda's testimony admits knowledge of facts, conditions, or circumstances regarding the structural problems with her house well before receiving her expert's report in May 2006. Olshan first installed the pilings in July 2001. Nelda admitted she noticed cracking and doors sticking in April 2002, and she admitted that as of this time she knew plumbing leaks could cause foundation damage. Olshan came out to the house in August 2003 and again in October 2003 to re-level the house. At both times, according to Nelda, an Olshan employee told her they were at her house to "fix the mistakes" and to "replace what was bad." Sometime prior to October 2003, according to Nelda, an Olshan employee told her Olshan was "not doing a good job under the house [and it was] the worst job [he had] ever seen [and she should] find an attorney because [her] house is messed up." She said she went to Walgreen's to buy a camera that she gave to this man to take pictures under the house and he took the pictures, but "that same day the camera was missing." Also, Nelda testified she overheard the foreman tell his workers not to speak to her and anyone taking pictures would be fired on the spot.

Nelda knew that Olshan did not replace the dirt in the tunnels when it dug the tunnels in May 2003 and again in July 2003. Although she testified she was not told that leaving the tunnels open would damage her house, in October 2003, when Olshan's crew chief told her he wanted to fill in the tunnels, Nelda refused to allow him to do so based on the earlier conversation she had with the Olshan employee. Even as late as either January or February of 2004 when Olshan came to the

house to fill in the tunnels with dirt, Nelda did not allow them to do so because "they still couldn't show [her] anything that they had done under the house that they said they were going to fix."

Nelda contends a lay person, such as herself, could not have discovered the defects if Olshan's own experts allegedly did not discover the defects. Nelda also contends Linehan refuted any contention she should have discovered the defects earlier than May 2006, and his testimony is the only direct evidence on this issue. Linehan's only comment about why Nelda would not have known about the problems is as follows:

> Q.     . . . [F]rom an engineering perspective what about her problems makes them hard to discover?
>
> A.     Well, she didn't know about the depth issue, not going deep enough.

Although Linehan's testimony may establish that Nelda could not have known about the depth of the pilings before his May 2006 report, his testimony does not refute whether she *should* have known about her injury. Nelda may not have known the specific cause of her injury or the full extent of the injury, but her injury was "the type of injury that generally is discoverable by the exercise of reasonable diligence . . . ." *HECI Exploration Co.*, 982 S.W.2d at 886. In this case, each of the discovery questions in the jury charge asked, "By what date should [Nelda], in the exercise of reasonable diligence, have discovered all the [actions of Olshan giving rise to the particular claim]?" Thus, the issue here, consistent with the jury questions and the case law, is not when *did* Nelda discover Olshan's wrongful actions, but when *should, in the exercise of reasonable diligence*, Nelda have discovered Olshan's wrongful actions. *See J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 330 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding same). "Evidence of when [s]he *did* discover is not necessarily evidence of when [s]he *should have* discovered." *Id.* Therefore,

we conclude that by October 2003, Nelda's knowledge of facts, conditions, or circumstances put her on notice of injuries resulting from Olshan's work. There is no evidence to support the jury's findings that Nelda should not, in the exercise of reasonable diligence, have discovered Olshan's acts until the receipt of her expert's May 18, 2006 report. Instead, the evidence conclusively established that Nelda, in the exercise of reasonable diligence, should have discovered Olshan's acts or omissions, whether presented in terms of breach of warranty or violations of the DTPA, at least by October 2003. Accordingly, neither the discovery rule nor the common law doctrine of fraudulent concealment operated to toll or suspend the limitations period for Nelda's DTPA and implied warranty claims.

In addition to her argument above that limitations was tolled under the common law doctrine of fraudulent concealment, Nelda also relied on Texas Business and Commerce Code section 17.565, which provides as follows:

> All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. *The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.*

TEX. BUS. & COM. CODE § 17.565 (emphasis added).

The jury answered "yes" to question 17, which asked whether Nelda's "failure to file suit until June 6, 2006 [was] caused by [Olshan] knowingly engaging in conduct solely calculated to

induce [Nelda] to refrain from or postpone filing suit." On appeal, Olshan contends Nelda's suit is still untimely because it was not filed within the additional six months provided by section 17.565. Because we conclude Nelda's claims accrued as late as October 2003, the two-year limitations period would have run in October 2005, and an additional 180 days would have extended the two-year limitations period to April 2006, two months before the lawsuit was filed.

Accordingly, Nelda's DTPA and implied warranty claims are barred by the two-year statute of limitations. However, her fraud claim was timely filed under the four-year statute of limitations as measured from an October 2003 accrual date. Accordingly, we turn to Nelda's fraud claim.

## COMMON LAW FRAUD

The crux of Nelda's fraud claim is that (1) Olshan represented in a June 7, 2001 letter addressed to her and her husband that its Cable Lock system "is recognized as the best system for the San Antonio area," and (2) Olshan concealed from or failed to disclose to her that its pilings did not go deep enough, it did not epoxy some of the pilings, and there existed a close business relationship between Olshan and BEC Engineering. Olshan contends there is no evidence to support Nelda's fraud allegations. We must agree.

The jury charge instructed the jury that fraud occurs when "the other party relies on the misrepresentation and thereby suffers injury" or when "the other party suffers injury as a result of acting without knowledge of an undisclosed fact." The jury charge also instructed the jury that fraud occurs when "the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth [and] is made with the intention that it should be acted upon by the other

party" or when "the party intends to induce the other party to take some action by failing to disclose the [material] fact."

Fraud usually is not susceptible to direct proof; it invariably must be proven by circumstantial evidence. *Mathis v. Golden*, 228 S.W.3d 301, 306 (Tex. App.—Waco 2007, no pet.). However, although circumstantial evidence may be used to establish any material fact, "it must transcend mere suspicion." *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001) (Phillips, C.J., concurring and dissenting). Moreover, a vital fact may not be established by piling inference upon inference. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968).

As support for her fraud allegations, Nelda points primarily to the testimony of her expert Jim Linehan. Linehan's criticisms were directed to the failure of Olshan's engineer, Michael Couch, and BEC Engineering to include in their reports that the pilings did not go deep enough and that Olshan did not properly epoxy the pilings. However, Nelda said she did not read a July 2001 report prepared by Couch about the work that had been done at her house although she admitted the report was sent to her house. She was not asked whether she read the BEC report. Instead, she testified she left most details to her husband, and it was not until after he moved out of the house in August 2003 that she dealt directly with Olshan.

In Linehan's opinion, foundation failure was inevitable because the Cable Lock system used by Olshan did not require that the pilings be installed to a sufficient depth. Instead, he opined that a different system (the Bell-Bottom Pier system) should have been suggested by Olshan and selected by the Gonzaleses. However, Nelda did not sign the Olshan Agreement wherein the Cable Lock

system was selected, and there is no evidence either Nelda or her husband would have selected the more expensive[2] Bell-Bottom Pier system.

We conclude this evidence is not legally sufficient to support a finding on either reliance or intent. Nelda admitted she did not read Couch's reports and she was not asked about BEC's report. Although Linehan's opinion may have established that a *different* and more expensive system would have performed better, no direct evidence was offered to show that any individual who spoke to Nelda did not believe that the Olshan system was working as it was intended to work. Nor was any direct evidence offered to show that anyone who spoke to Nelda intended for her to take any action in reliance on their opinions. Instead, the evidence raises the following series of inferences: Olshan knew the system suggested by Linehan was the better system, but Olshan instead decided on its own without discussion with the Gonzaleses to utilize its Cable Lock system; the Gonzales would have chosen the more expensive system had it been offered; any representations made to Nelda that the Olshan system was performing as intended were false; and if Nelda had read Couch's or BEC's reports, she would have relied on the reports to her detriment. These inferences amount to impermissible inference stacking. In other words, each inference raised by the evidence would ultimately be premised on another inference. At best, the circumstantial evidence presented amounts to a mere suspicion that Olshan acted fraudulently. However, mere suspicion does not amount to more than a scintilla of evidence. *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.

---

[2] Gary Pennington testified for Nelda at trial. Pennington's company, Pennington & Associates, provides insurance adjusters who assist homeowners in measuring, documenting, and presenting claims to their insurance companies. Pennington relied on Linehan's recommendation that pilings be driven to a depth of twenty-five feet to arrive at his estimated cost of $51,588.14 for the system recommended by Linehan. Olshan's Agreement provided for the installation of "cable-locked press [concrete] pilings" and related work, for a total contract price of $25,975.

1993) (stating that circumstantial evidence establishing mere suspicion cannot be converted into evidence of a material fact). Therefore, we conclude the evidence in support of Nelda's fraud claim is legally insufficient.

**CONCLUSION**

We reverse the trial court's judgment and render a take-nothing judgment in favor of Olshan.[3]

Sandee Bryan Marion, Justice

---

[3] ▲ We do not address Olshan's remaining issues on appeal because they are not dispositive to this appeal. Tex. R. App. P. 47.1.