# IN THE SUPREME COURT OF TEXAS

════════════
No. 17-0636
════════════

DANIEL NGHIEM, PETITIONER,

v.

RUPOM SAJIB AND GLOBAL AVIATION SERVICE, INC.
D/B/A GLOBAL AVIATION SERVICES, AND D/B/A GLOBAL
AVIATION SERVICES, INC., RESPONDENTS

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════

**Argued September 17, 2018**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

In *Melody Home Manufacturing Co. v. Barnes*, we held that "an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers suing under the DTPA"[1]—the Deceptive Trade Practices–Consumer Protection Act.[2] As we have previously noted, some courts have interpreted that statement to mean that the implied

---

[1] 741 S.W.2d 349, 354 (Tex. 1987).

[2] TEX. BUS. & COM. CODE §§ 17.41–17.63.

warranty is actionable *only* under the DTPA, while others have concluded that a claim of breach can be brought under the common law as well as the DTPA.[3] We agree with the latter.

The claim for breach of implied warranty in this case was not brought under the DTPA and thus is not covered by that statute's two-year limitations period.[4] We reverse the court of appeals' judgment[5] and remand the case to the trial court for further proceedings.

## I

The case comes to us on the pleadings, and our description of it is from the parties' undisputed allegations.

Daniel Nghiem and Rupom Sajib were passengers in Nghiem's small plane when its engine failed and it crash-landed. Both were injured, and the plane was destroyed. The pilot was an employee of Global Aviation Services, Inc., which had serviced the plane for its previous owner for years and made repairs to the plane immediately before the crash. Sajib sued Global for negligence a few weeks before the two-year statute of limitations would have run.[6] After it ran, Nghiem

---

[3] *See Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 55 n.9 (Tex. 2013) (noting the court split). The U.S. Court of Appeals for the Fifth Circuit and one Texas court of appeals have held that the implied warranty of good and workmanlike repairs is actionable under both the common law and the DTPA. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 362–363, 362 n.5 (5th Cir. 1988); *Basic Energy Serv., Inc. v. D–S–B Props., Inc.*, 367 S.W.3d 254, 269 & n.9 (Tex. App.—Tyler 2011, no pet.). Four Texas courts of appeals have held that this implied warranty is only actionable under the DTPA. *See Sw. Olshan Found. Repair Co. v. Gonzales*, 345 S.W.3d 431, 437 (Tex. App.—San Antonio 2011), *aff'd on other grounds*, 400 S.W.3d 52 (Tex. 2013); *Koehler v. Sears, Roebuck & Co.*, No. 05-98-01325-CV, 2001 WL 611453, at *5 (Tex. App.—Dallas June 6, 2001, no pet.); *Foreman v. Pettit Unlimited, Inc.*, 886 S.W.2d 409, 412 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Darr Equip. Co. v. Allen*, 824 S.W.2d 710, 712 (Tex. App.—Amarillo 1992, writ denied).

[4] *See* TEX. BUS. & COM. CODE § 17.565.

[5] 559 S.W.3d 188.

[6] *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

petitioned to intervene as a plaintiff in the suit, first asserting only a claim of negligence, then adding a claim for breach of the implied warranty of good and workmanlike repair of tangible goods or property. Nghiem sought damages for injury to his plane as well as for his personal injuries.

Global moved to strike Nghiem's petition, asserting that both claims were barred by limitations. Global argued that Nghiem's implied warranty claim was actionable only under the DTPA and that its two-year statute of limitations applied.[7] Nghiem agreed that his negligence claim was barred but argued that his implied warranty claim was under the common law, not the DTPA, and the residual four-year statute of limitations applied.[8] The trial court agreed with Global, struck Nghiem's petition, and severed its order, making it final and appealable.[9]

The court of appeals affirmed.[10] Noting the court split on whether a claim for breach of the implied warranty of good and workmanlike repairs can be made under the common law or only under the DTPA, the court followed its prior decision in *Foreman v. Pettit Unlimited, Inc.* and held that the implied warranty is actionable only under the DTPA and subject to its statute of limitations.[11]

---

[7] *See* TEX. BUS. & COM. CODE § 17.565.

[8] *See* TEX. CIV. PRAC. & REM. CODE § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.").

[9] The trial court later rendered judgment on a verdict for Sajib against Global for about $1.5 million. *Sajib v. Global Aviation Servs., Inc.*, No. 2015-27690-7 (61st Dist. Ct., Harris Cty., Tex. June 30, 2016). Global appealed, and the case settled. *Global Aviation Servs., Inc. v. Sajib*, No. 01-16-00771-CV, 2017 WL 2545108 (Tex. App.—Houston [1st Dist.] June 13, 2017, no pet.) (mem. op.). The parties have not argued, and we do not consider, whether the resolution of Sajib's claim moots Nghiem's contention that he should have been permitted to intervene.

[10] 559 S.W.3d 188.

[11] *Id.* at 191–192 (relying on *Foreman v. Pettit Unlimited, Inc.*, 886 S.W.2d 409, 412 (Tex. App.—Houston [1st Dist.] 1994, no writ)).

3

We granted Nghiem's petition for review.[12]

## II

Rule 60 of the Texas Rules of Civil Procedure states that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party."[13] "The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right."[14] "An intervenor is not required to secure the court's permission to intervene; the party who opposed the intervention has the burden to challenge it by a motion to strike."[15] "If any party to the pending suit moves to strike the intervention, the intervenor[] ha[s] the burden to show a justiciable interest in the pending suit."[16] Because intervention is a matter of right subject to a motion to strike, it follows that the intervenor need only respond to the grounds stated in the motion.[17]

---

[12] 61 Tex. Sup. Ct. J. 1405 (June 15, 2018).

[13] TEX. R. CIV. P. 60.

[14] *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (per curiam) (orig. proceeding).

[15] *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990).

[16] *Union Carbide*, 273 S.W.3d at 155. "To constitute a justiciable interest, the intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought in the original suit. In other words, a party may intervene if the intervenor could have brought the pending action, or any part thereof, in his own name." *Id.* (internal quotation marks, brackets, and citations omitted). Global's only argument that Nghiem lacks a justiciable interest in Sajib's lawsuit is that the breach of implied warranty claim is barred by the DTPA limitations period. The confinement of our opinion to that argument should not be read to imply that Nghiem otherwise has the justiciable interest required for intervention.

[17] The court may also consider whether "the intervention will . . . complicate the case by an excessive multiplication of the issues" and how important it is "to effectively protect the intervenor's interest." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. Such considerations do not appear to have been involved in the trial court's decision to strike Nghiem's intervention.

4

Global moved to strike Nghiem's petition "due to his failure to bring his causes of action . . . within the two-year statute of limitations for both of his claims." Global asserted that Nghiem's negligence claim was governed by the statute generally applicable to tort claims[18] and his breach of implied warranty claim by the DTPA.[19] In response, Nghiem did not contest that limitations barred his negligence claim but argued that the applicable limitations period for his breach of warranty claim was not two years under the DTPA but four years under the residual statute of limitations.[20] Thus, we consider only whether the DTPA's or residual statute's limitations apply to Nghiem's breach of implied warranty claim.

---

[18] TEX. CIV. PRAC. & REM. CODE § 16.003(a). The statute does not expressly cover all torts. It provides that "a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues." *Id.* But we have explained: "In general, torts developed from the common law action for 'trespass,' and a tort not expressly covered by a limitation provision nor expressly held by this court to be governed by a different provision would presumptively be a 'trespass' for limitations purposes." *Williams v. Khalaf*, 802 S.W.2d 651, 654 (Tex. 1990).

[19] *See* TEX. BUS. & COM. CODE § 17.565.

[20] *See* TEX. CIV. PRAC. & REM. CODE § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."). Nghiem has never asserted the other four-year statute of limitations, Section 16.004(a), that we have sometimes applied to breach of contract claims. That statute expressly covers certain contract claims and the torts of fraud and breach of fiduciary duty. It provides: "A person must bring suit on the following actions not later than four years after the day the cause of action accrues: (1) specific performance of a contract for the conveyance of real property; (2) penalty or damages on the penal clause of a bond to convey real property; (3) debt; (4) fraud; or (5) breach of fiduciary duty." TEX. CIV. PRAC. & REM. CODE § 16.004(a). We have explained that "[t]he most logical reading . . . is to treat 'debt' actions under section 16.004 as breach-of-contract actions". *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (per curiam). But we have also indicated, without analysis, that claims for breach of contract are covered by the residual statute. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011) (stating that "fraud and breach of contract [claims] have four-year statutes of limitations" (citing TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051)); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (stating that "the general four-year statute of limitations for breach of contract applies" (citing TEX. CIV. PRAC. & REM. CODE § 16.051)).

**A**

The DTPA provides that "[a] consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . breach of an express or implied warranty".[21] In *La Sara Grain Co. v. First National Bank of Mercedes*, we observed that generally, "[i]mplied warranties are derived primarily from statute, although some have their origin at common law."[22] We added: "The DTPA does not . . . create any warranties; therefore any warranty must be established independently of the act."[23] The DTPA is not the exclusive remedy for a breach of warranty but provides a new cause of action separate and apart from a cause of action under the common law, with different damages and remedies.[24] Its remedies "are in addition to any other procedures or remedies provided for in any other law".[25]

Three years after we decided *La Sara Grain*, we held in *Melody Home* that "an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers suing under the DTPA."[26] Citing *La Sara Grain*, we stated that "[a]n implied warranty arises by operation of law when public policy so mandates".[27] Our holding cannot

---

[21] TEX. BUS. & COM. CODE § 17.50(a)(2).

[22] 673 S.W.2d 558, 565 (Tex. 1984).

[23] *Id.*

[24] TEX. BUS. & COM. CODE § 17.50(b) (allowing economic, mental anguish, and additional damages; injunctive relief; restitution; a receivership; and "any other relief which the court deems proper"); *id.* § 17.50(d) (allowing attorney fees).

[25] *Id.* § 17.43 ("The provisions of this subchapter are not exclusive.").

[26] *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987).

[27] *Id.* at 353.

reasonably be read to directly contradict authority on which we expressly relied. The court of appeals in *Foreman* summarily concluded that a breach of the *Melody Home* implied warranty is actionable only under the DTPA, pointing to another statement in that opinion that consumers of services do "not have the protection of a statutory or common law implied warranty scheme."[28] But that statement described the state of the law *before Melody Home*; it says nothing about whether the implied warranty we recognized is actionable apart from the DTPA.

The implied warranty of workmanlike repairs is a creature of the common law. A breach of the warranty can be asserted in an action for violations of the DTPA, but it can also be asserted in a common-law action. We disapprove of the cases that have reached a contrary conclusion.[29] Nghiem sued under the common law, not the DTPA. His common-law action for breach of the implied warranty is not barred by the DTPA's inapplicable two-year statute of limitations.

## B

Nghiem argues that his action sounds in contract and should be governed by the generally applicable, residual statute of limitations, which is four years.[30] Nghiem does not dispute Global's assertion that the two had no written contract, but argues that evidence not yet developed will show

---

[28] *Foreman v. Pettit Unlimited, Inc.*, 886 S.W.2d 409, 412 (Tex. App.—Houston [1st Dist.] 1994, no writ) (quoting *Melody Home*, 741 S.W.2d at 353).

[29] *See id.*; *Sw. Olshan Found. Repair Co., LLC v. Gonzales*, 345 S.W.3d 431, 437 (Tex. App.—San Antonio 2011), *aff'd on other grounds*, 400 S.W.3d 52 (Tex. 2013); *Koehler v. Sears, Roebuck & Co.*, No. 05-98-01325-CV, 2001 WL 611453, at *5 (Tex. App.—Dallas June 6, 2001, no pet.); *Darr Equip. Co. v. Allen*, 824 S.W.2d 710, 712 (Tex. App.—Amarillo 1992, writ denied); *Irwin v. Country Coach Inc.*, No. 4:05-CV-145, 2006 WL 278267, at *6 (E.D. Tex. Feb. 3, 2006); *Lowe v. Burlington Stores, Inc.*, No. 3:16-CV-03068-B (BF), 2017 WL 1185285, at *3 (N.D. Tex. Mar. 7, 2017), report and recommendation adopted, No. 3:16-CV-03068-B-BF, 2017 WL 1165560 (N.D. Tex. Mar. 29, 2017).

[30] TEX. CIV. PRAC. & REM. CODE § 16.051.

that the parties had an oral contract. Global argues on appeal that Nghiem's breach of implied

warranty claim "is rooted in tort", but it makes that argument only in support of its contention that

the DTPA statute of limitations applies. Global has never cited the generally applicable two-year

statute of limitations for torts[31] or argued for its application to Nghiem's implied warranty claim in

this case.

No statute of limitations expressly refers to an action for breach of implied warranty, so in

determining the limitations period, "courts look to analogous causes of action for which an express

limitations period is available either by statute or by case law."[32] Causes of action for breach of

implied warranties defy simple categorization because an implied warranty is "a freak hybrid born

of the illicit intercourse of tort and contract."[33] Generally, breach of a duty created by contract gives

rise to a contract claim, whereas breach of a duty imposed by operation of law gives rise to a tort

---

[31] *Id.* § 16.003(a).

[32] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518 (Tex. 1998).

[33] *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008) (quoting William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 YALE L.J. 1099, 1126 (1960)). The implied warranties recognized in Texas are: (1) the implied warranty of habitability for new homes, recognized in *Humber v. Morton*, 426 S.W.2d 554, 555 (Tex. 1968); (2) the implied warranty of good and workmanlike construction, also recognized in *Humber*, *id.*; (3) the implied warranty of merchantability, created by the Uniform Commercial Code, codified in TEX. BUS. & COM. CODE § 2.314; (4) the implied warranty of fitness for a particular purpose, also created by the UCC, codified in TEX. BUS. & COM. CODE § 2.315; (5) the implied warranty of workmanlike repairs of tangible goods or property (at issue in the present case), created in *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 353 (Tex. 1987); and (6) the implied warranty that leased premises are suitable for their intended commercial purpose, recognized in *Davidow v. Inwood North Professional Group*, 747 S.W.2d 373, 377 (Tex. 1988). We have recognized additional implied warranties that have since been superseded by other law. *See Jacob E. Decker & Sons v. Capps*, 164 S.W.2d 828, 829 (1942) (implied warranty of the fitness of food for human consumption), *superseded by McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex. 1967) (adopting the Restatement (Second) of Torts § 402A to govern strict liability tort claims for defective products that cause physical harm); *Kamarath v. Bennett*, 568 S.W.2d 658, 661 (Tex. 1978) (implied warranty of habitability for residential leases), *superseded by statute*, Act of May 28, 1979, 66th Leg., R.S. ch. 780, §§ 1–18, 1979 Tex. Gen. Laws 1978.

claim.[34] Implied warranties, however, can have feet in both camps, created by operation of law in connection with a contract.[35] In addition, different implied warranties behave differently.[36]

In *Melody Home*, we noted that "[i]mplied warranties are created by operation of law and are grounded more in tort than in contract", citing *La Sara Grain* and *Humber v. Morton*.[37] Years earlier, in *Humber*, we had recognized the implied warranties that a new home was constructed in a good and workmanlike manner and is suitable for human habitation.[38] In doing so we "pointed out that generally in Texas, the notion of implied warranty arising from sales is considered to be a tort rather than a contract concept."[39] We cited our decision in *Jacob E. Decker & Sons v. Capps*, which created an implied warranty that food is fit for human consumption,[40] a precursor to strict liability in tort.[41]

---

[34] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *see also Int'l Printing Pressmen Assistants' Union v. Smith*, 145 Tex. 399, 409 (1946).

[35] *JCW Elecs.*, 257 S.W.3d at 704 ("Conceptually, the breach of an implied warranty can either be in contract or in tort depending on the circumstances.")

[36] *See, e.g.*, *Centex Homes v. Buecher*, 95 S.W.3d 266, 272–274 (Tex. 2002) (explaining the differences between the implied warranty of habitability and the implied warranty of workmanlike construction).

[37] *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 352 (Tex. 1987) (citing *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984); *Humber v. Morton*, 426 S.W.2d 554, 555 (Tex. 1968)); *see also JCW Elecs.*, 257 S.W.3d at 704; *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 52 (Tex. 1998); *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 462–463 (Tex. 1980).

[38] 426 S.W.2d at 555.

[39] *Id.* at 556.

[40] *Id.* (citing *Jacob E. Decker & Sons v. Capps*, 164 S.W.2d 828, 829 (Tex. 1942)).

[41] *See Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex. 1977) (explaining that "[s]ince the *Decker* decision, Texas has adopted section 402A of the Restatement (Second) of Torts", which "furnish[es] the user of defective products [a] remed[y] [for physical injuries] [that was] unavailable at the time of *Decker*'s writing").

But only three months before we decided *Humber*, in *Certain-Teed Products Corp. v. Bell*, we said that the implied warranty of workmanlike construction grows out of the home construction contract.[42] Since "a warranty which the law implies from the existence of a written contract is as much a part of the writing as the express terms of the contract," we held that "the action to enforce such a warranty is governed by the [four-year] statute [of limitations] pertaining to written contracts."[43] Even though the implied warranty of workmanlike construction is imposed by operation of law, the obligation still arises from the contract and becomes part of the contract. Absent a contract, the warranty would not arise. Relying on *Certain-Teed*'s reasoning, the U.S. Court of Appeals for the Fifth Circuit in *Walker v. Sears, Roebuck & Co.* applied the four-year statute of limitations to a claim for breach of the *Melody Home* implied warranty of workmanlike repairs.[44] The court held that the defendant's "implied warranty obligations . . . arose from the contract" and existed apart from the DTPA.[45]

Nghiem and Global have focused their arguments on the applicability of the DTPA's two-year limitations period.[46] We need not decide Nghiem's contention that the residual statute of limitations applies to his claim. Global's only objection to his intervention was that the claim was

---

[42] 422 S.W.2d 719, 720 (Tex. 1968).

[43] *Id.* at 721.

[44] 853 F.2d 355, 363 (5th Cir. 1988).

[45] *Id.* at 361.

[46] They have not even addressed whether an implied warranty exists in the circumstances described in the sparse record before us. *See Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998) (holding "that Texas law does not recognize an implied warranty that services incidental to helicopter maintenance will be performed in a good and workmanlike manner").

barred by the DTPA limitations period, and we have held that it is not. The trial court thus abused its discretion in striking Nghiem's plea in intervention.

*　　*　　*　　*　　*

The judgment of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: February 1, 2019