# Supreme Court of Texas

No. 21-0072

Taylor Morrison of Texas, Inc. and Taylor Woodrow
Communities-League City, Ltd.,

*Petitioners*,

v.

Andrew Kohlmeyer and April Kohlmeyer,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

**PER CURIAM**

A central issue in this case is whether direct-benefits estoppel requires a subsequent homeowner to arbitrate construction claims against the homebuilder when the original homeowner's purchase agreement disclaimed the existence of certain common-law warranties. The court of appeals' decision is inconsistent with our recent opinion in *Lennar Homes of Texas Land & Construction, Ltd. v. Whiteley*, __ S.W.3d __, 2023 WL 3398584 (Tex. May 12, 2023). Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, render judgment ordering arbitration of the

underlying claims, and remand this case to the trial court for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1, 60.2.

In 2013, Jason and Amanda Davis entered into a purchase agreement with Taylor Morrison[1] for a house to be built in League City, Texas. Among other provisions, the agreement provided a one-year limited warranty for the home, as set forth in an attached document titled Taylor Morrison Limited Home Warranty (the Limited Warranty), which the agreement incorporated by reference. The Limited Warranty specified various "Quality Standards" to govern Taylor Morrison's construction of the home, including standards pertaining to the interior concrete and foundation, framing, roof, exterior siding and trim, cementitious finish, plumbing, and retaining walls.

The Limited Warranty also contained various exclusions from coverage, including exclusions for homeowner damage, cosmetic defects, modifications by the homeowner, consequential damages, timely reporting, water damage, and natural catastrophes, occurrences, and accidents. For example, the exclusion for natural catastrophes, occurrences, and accidents excluded from coverage "[d]amages, loss or injury caused by . . . [the] presence of mold." The exclusion for timely reporting excluded from coverage "[d]efects which are not reported in writing to Seller within the Limited Warranty Term."

In addition to incorporating the terms of the Limited Warranty, section 10 of the purchase agreement included the following express disclaimer:

---

[1] We refer to the petitioners, Taylor Morrison of Texas, Inc. and Taylor Woodrow Communities-League City, Ltd., collectively, as Taylor Morrison.

2

> Seller expressly disclaims, and buyer hereby waives, any warranties, express or implied, other than the Limited Warranty, including, without limitation, any warranties of merchantability, habitability, quality of construction, or fitness for a particular purpose, with respect to the property . . . . Buyer acknowledges that other than this Limited Warranty, Seller is making no other representations, promises, or warranties of any kind, including, without limitation, any express or implied warranties of merchantability, habitability, quality of construction, or fitness for a particular purpose, with respect to the property . . . .

(capitalization removed). The purchase agreement also contained the following separate disclaimer and waiver regarding mold conditions:

> [W]hether or not you as a homeowner experience mold growth in your home depends largely on how you manage and maintain your home. We urge you to read and follow the Mold Prevention Tips found in your Homeowner Maintenance Manual. Our responsibility as a homebuilder must be limited to things that we can control. As explained in our written limited warranty, which has been separately provided to you, we will repair or replace defects in our construction as and to the extent provided in such limited warranty. We will not, however, be responsible for any damages caused by mold, or by some other agent, that may be associated with defects in our construction, including, without limitation, property damage, personal injury, loss of income, emotional distress, death, loss of use, loss of value and adverse health effects. To the extent permitted by law and except as provided in the written limited warranty that has been separately provided to you, all other warranties, express or implied, including but not limited to any implied warranty of condition, good and workmanlike manner, merchantability, or fitness for a particular purpose, are hereby expressly disclaimed and negated.

In addition to the above disclaimers, the purchase agreement contained a dispute resolution clause, which provided as follows:

> Any and all claims, controversies, breaches or disputes by or between the parties hereto, arising out of or related to this purchase agreement [or] the property . . . whether such dispute is based on contract, tort, statute, or equity, including without limitation, any dispute over . . . (f) allegations of latent or patent design or construction defects . . . (g) the property, including without limitation, the planning, surveying, design, engineering, grading, specifications, construction or other development of the property . . . (h) deceptive trade practices or (i) any other matter arising out of or related to the interpretation of any term or provision of this purchase agreement, or any defense going to the formation or validity of the agreement, or any provision of this purchase agreement . . . shall be arbitrated pursuant to the Federal Arbitration Act and subject to the procedures set forth as follows . . . .

(capitalization removed).

In 2016, the original homeowners sold the property to four individuals, who then resold the home later that same year to Andrew and April Kohlmeyer. On September 17, 2018, the Kohlmeyers filed suit against Taylor Morrison, asserting that "[t]he Home has numerous construction and design defects that cause unacceptable levels of moisture and water to develop in the Home's interior – causing substantial mold growth throughout the home." The Kohlmeyers alleged that Taylor Morrison (1) breached the implied warranty of habitability because "[t]he mold itself, as well as the construction defects that caused the mold, are latent defects that rendered the Home unsafe, unsanitary, or otherwise unfit for living therein," and (2) breached the implied warranty of good workmanship because it failed to "construct

4

the Home in the same manner as would a generally proficient builder engaged in similar work and performing under similar circumstances." The Kohlmeyers also asserted a claim for negligent construction, alleging that Taylor Morrison breached its duty to exercise ordinary care in the construction of the home, and a claim for violations of the Deceptive Trade Practices-Consumer Protection Act.

Taylor Morrison filed a plea in abatement and a motion to compel arbitration. Although Taylor Morrison recognized that the Kohlmeyers were not parties to the original purchase agreement containing the arbitration clause,[2] Taylor Morrison argued that the Kohlmeyers were bound to arbitrate their claims under the doctrines of direct-benefits estoppel and implied assumption.[3] The trial court initially granted the motion to compel arbitration but, following an Agreed Motion for Rehearing, denied Taylor Morrison's Amended Plea in Abatement and Motion to Compel Arbitration in all respects.

Taylor Morrison appealed the denial of its motion to compel arbitration, and the court of appeals affirmed, holding that Taylor Morrison failed to show the existence of a valid arbitration agreement that is binding on the Kohlmeyers. 634 S.W.3d 297, 305 (Tex. App.— Houston [1st Dist.] 2021). Relying on our decisions in *JCW Electronics,*

---

[2] *Cf. Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585-86 (Tex. 2022) ("[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement.").

[3] *Cf. In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (recognizing "six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements," including "assumption" and "equitable estoppel").

*Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008), and *Nghiem v. Sajib*, 567 S.W.3d 718 (Tex. 2018), the court of appeals rejected Taylor Morrison's reliance on the doctrine of direct-benefits estoppel because "[w]hile the question of whether Taylor Morrison validly disclaimed the implied warranty of good workmanship may be determined by reference to the original purchase agreement, the warranty itself does not arise solely from the contract." 634 S.W.3d at 309. After rejecting Taylor Morrison's alternative arguments about implied assumption, the court of appeals concluded that the trial court did not abuse its discretion in denying the motion to compel arbitration without reaching the remainder of Taylor Morrison's arguments regarding the scope of the relied-upon arbitration provision. *Id.* at 311.[4] Taylor Morrison then filed a petition for review in this Court on December 22, 2021.

While Taylor Morrison's petition was pending, the Court decided *Lennar Homes*, which also involved mold-related claims for negligent construction and breach of the implied warranties of habitability and good workmanship brought by a subsequent purchaser against the homebuilder. 2023 WL 3398584, at *3. In that case, we held that the subsequent purchaser was bound by the arbitration clause in the original purchase agreement under the doctrine of direct-benefits estoppel. *Id.* at *1.

After noting that the implied warranties of good workmanship and habitability are as much a part of the writing as the express terms

---

[4] *Cf. Taylor Morrison of Tex., Inc. v. Skufca*, 660 S.W.3d 525, 527-28 (Tex. 2023) ("If any one of the children's claims is based on the parents' purchase agreement, then the children must arbitrate all claims that fall under the scope of the purchase agreement's arbitration clause.").

6

of the contract and are automatically assigned to subsequent purchasers, *id.* at *6, we also concluded that the homebuilder's liability was not independent of its contractual undertaking because any implied warranty of good workmanship must survive supplantation by an express warranty in the original purchase contract, *id.* at *7; *see also MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 140 (Tex. 2014) (holding that a downstream purchaser "cannot obtain a greater warranty than that given to the original purchaser"). Similarly, any claim based on the implied warranty of habitability would depend on the content of the purchase agreement's disclosures. *Lennar Homes*, 2023 WL 3398584, at *8; *see also Centex Homes v. Buecher*, 95 S.W.3d 266, 275 (Tex. 2002) (holding the implied warranty of habitability "does not include defects, even substantial ones, that are known by or expressly disclosed to the buyer"). Thus, whether the purchase agreement's disclaimers and disclosures were sufficient to negate the implied warranty of habitability or supplant the implied warranty of good workmanship would depend on the particulars of the purchase agreement, and the homeowner's claims therefore did not stand independently of the purchase agreement. *Lennar Homes*, 2023 WL 3398584, at *7-8.

Here, as in *Lennar Homes*, in addition to general and specific disclaimers, the original purchase agreement contained disclosures that could affect the implied warranty of habitability and performance standards that could affect the implied warranty of good workmanship. The court of appeals' determination that direct-benefits estoppel did not apply because "the Kohlmeyers' claims allege liability arising from

7

general obligations imposed by common-law negligence and relevant statutes," 634 S.W.3d at 307, is therefore directly in conflict with our subsequent opinion in *Lennar Homes*. For the reasons discussed above and at greater length in *Lennar Homes*, we hold that the Kohlmeyers were bound to arbitrate according to the original purchase agreement under the doctrine of direct-benefits estoppel.

Although the court of appeals declined to address whether the Kohlmeyers' claims fall within the scope of that agreement's arbitration provision, *see id.* at 305 n.4, the provision broadly covers any claims or disputes related to the agreement or the property, including any disputes over the property's design or construction defects. The Kohlmeyers have not advanced any argument (in any court) that the provision is inapplicable aside from the parties' dispute over the applicability of direct-benefits estoppel. We therefore address the issue in the first instance, *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (noting that the Court may review issues not considered in the court of appeals in the interest of judicial economy), and hold that the Kohlmeyers' claims—all of which relate to defects in the construction or design of the home—fall within the scope of the arbitration provision and are subject to arbitration.

Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, render judgment ordering arbitration of the underlying claims, and remand the case to the trial court for further proceedings consistent with this opinion, such as the grant of an appropriate stay. *See* TEX. R. APP. P. 59.1, 60.2.

**OPINION DELIVERED:** June 30, 2023