**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00923-CV

_____

**TAMMY TRAN, TAMMY TRAN ATTORNEYS AT LAW, L.P., AND ADAMS TRAN, Appellants**

**V.**

**TONY BUZBEE, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-82608**

---

## MEMORANDUM OPINION

This appeal arises from two separate series of transactions. First, Tony Buzbee loaned funds to Tammy Tran and Tammy Tran Attorneys at Law, L.P. (collectively "Tran") for a separate lawsuit Tran was prosecuting. When Tran did not repay the loan, Buzbee sued her to collect payment in 2014. The parties settled that lawsuit by

signing a promissory note and confession of judgment. The parties later entered into two forbearance agreements to delay the due date on two annual payments under the promissory note. Buzbee filed this lawsuit alleging that Tran defaulted under the note and one of the forbearance agreements.

Second, Tran and her husband Adams Tran allegedly made contributions to and worked for Buzbee's 2019 mayoral campaign. Tran counterclaimed and alleged that Buzbee promised to pay her for her contributions. Adams Tran intervened and asserted claims against Buzbee for unpaid campaign work.

Buzbee moved for summary judgment. The trial court granted the motion, rendered judgment for Buzbee for $765,000, and dismissed Tran's counterclaims. The summary judgment did not mention Adams Tran's claims.

In a single issue on appeal, the Trans contend that the trial court erred by rendering final summary judgment because: (1) the judgment granted more relief than requested in the summary judgment motion; (2) the judgment relied on unpleaded causes of action, and Buzbee did not properly plead his sole cause of action; (3) fact issues existed on Buzbee's claims; and (4) fact issues existed on Tran's counterclaims. We affirm in part and reverse and remand in part.

## Background

Buzbee and Tran are both attorneys. In 2010, Buzbee loaned Tran $1,250,000 for litigation expenses in an unrelated case. The record does not contain

documentation of this transaction, but Buzbee sued Tran in June 2014 to recover on the loan. The parties settled the 2014 lawsuit by executing a series of documents pertinent to this appeal. The parties entered a settlement agreement which required Tran to execute a promissory note for the principal of the 2010 loan and a confession of judgment waiving "any and all defenses." Buzbee agreed to nonsuit the 2014 lawsuit and hold the confession of judgment in escrow unless Tran defaulted on the note.

Tran signed the promissory note for the $1,250,000 principal of the loan. She agreed to repay the loan in annual installments of $250,000 over five years from 2016 to 2020. Payments were due April 17 of each year. The note stated that it "shall bear no interest," and it was secured in part by the confession of judgment.

Tran also signed the confession of judgment, which consisted of an original petition for confession of judgment and an agreed judgment. Tran signed an affidavit verifying the petition and the agreed judgment. These are the documents which Buzbee filed as his original petition in this case.

Tran was unable to timely pay the 2017 annual installment under the note, so the parties executed a written forbearance agreement. This agreement referenced the parties' settlement agreement and promissory note. Buzbee agreed to extend the due date of the annual installment from April 17 to December 1 in exchange for Tran paying six monthly forbearance payments of $10,000 each. The parties agree that

Tran actually paid $70,000 in forbearance payments in 2017 and paid the annual installment on December 5.

Tran also could not pay the 2018 annual installment. She entered into another forbearance agreement to extend the April 2018 due date. The record does not contain a written forbearance agreement for 2018. But the parties do not dispute that this agreement required Tran to pay $60,000 in four equal payments to extend the due date of the annual installment. In total, Tran agreed to pay $130,000 in forbearance payments in 2017 and 2018. The parties dispute whether Tran made all these payments or whether $15,000 remains unpaid. Tran was unable to make any additional annual installments on the note, and the parties agree that $750,000 remains outstanding on the note.

Meanwhile, Buzbee ran for mayor of the City of Houston in 2019. Tran allegedly contributed to Buzbee's campaign, including by providing office space, advertising, and food for volunteers. Tran's husband, Adams Tran, allegedly worked for Buzbee's campaign most of the year. Buzbee allegedly agreed either to repay the Trans more than $200,000 for their campaign contributions and work or to credit the amount against the outstanding principal of the promissory note, but he never did.

In December 2021, Buzbee initiated the underlying lawsuit by filing the confession of judgment which Tran had previously signed. The petition's allegations focused on the confession of judgment but also alleged that Tran had defaulted under

4

the promissory note. Tran filed an answer and counterpetition asserting numerous affirmative defenses and counterclaims. She asserted the defenses of offset, payment, release, accord and satisfaction, usury, fraud, and limitations. She asserted counterclaims based on the campaign contributions for usury, breach of contract, and fraud. She also asserted a counterclaim for quantum meruit on behalf of Adams Tran.

On September 5, 2023, Adams Tran filed a petition in intervention. He alleged that Buzbee rented offices from the Trans for the mayoral campaign, the Trans paid for food for campaign volunteers, and Adams Tran worked on the campaign for several months. Adams Tran alleged that Buzbee agreed to repay the Trans for their contributions to and work on the campaign but failed to do so. Adams Tran asserted claims for breach of contract, fraud, and quantum meruit.

Buzbee filed a motion for summary judgment on his claims, Tran's affirmative defenses, and some of Tran's counterclaims. He argued that the confession of judgment, promissory note, and forbearance agreements entitled him to an award of $765,000 representing the outstanding principal on the note plus $15,000 in unpaid forbearance payments. He also challenged Tran's defenses. Concerning usury, Buzbee argued that there was no dispute about the outstanding principal of the promissory note, the note provided that it "shall bear no interest," and therefore the principal of the note could not be treated as usurious interest. He

5

also argued that Tran had no evidence of two elements of her usury counterclaim. The summary judgment motion did not mention Adams Tran's claims. Buzbee attached the parties' settlement agreement, the promissory note, the 2017 forbearance agreement, the confession of judgment, and an affidavit from Buzbee stating that $750,000 remains outstanding on the principal of the note and $15,000 remains outstanding on the 2018 forbearance agreement.

Tran filed a response. She conceded that she had repaid only $500,000 on the note, but she nevertheless argued that fact issues existed because she withdrew her agreement to the confession of judgment. She also disputed that she had not paid all the forbearance payments, and she attached copies of checks totaling $130,000 made payable to Buzbee. Tran also disputed that Buzbee was entitled to judgment on her defenses and counterclaims. Concerning usury, she argued that Buzbee charged her $70,000 and $60,000 in 2017 and 2018, respectively, to delay payment of the note's $250,000 annual installment by 7.5 months in each year. She argued that the maximum lawful interest rate was 10 percent per year, which equaled only $15,625 in interest per year based on the annual installment amount. She therefore contended that she was entitled to penalties of three times the excessive interest charged or paid.

Tran attached an affidavit and numerous documents to her summary judgment motion, including the checks to Buzbee for forbearance payments. She then filed a

supplemental affidavit about an hour after the midnight deadline to respond to the summary judgment motion.

In his reply, Buzbee objected to the supplemental affidavit as untimely and moved to strike it. He also contended that Tran did not raise a fact issue concerning the amounts she owed under the promissory note and the forbearance agreement.

Tran responded to the motion to strike and moved for leave to file the affidavit an hour late. She also filed a sur-reply to the summary judgment motion reiterating that her usury defense and counterclaim were grounded on the forbearance payments, not the principal of the note.

The trial court granted the summary judgment motion in an order signed on September 12, 2023. The trial court did not expressly rule on either Buzbee's motion to strike the untimely affidavit or Tran's motion for leave to file it late, but the summary judgment stated that the court had considered "the timely filed summary judgment evidence[.]" The summary judgment awarded Buzbee $765,000 "as the unpaid principal" under the note "and forbearance payment," as well as attorney's fees and interest. The order expressly dismissed Tran's counterclaims, but it did not mention Adams Tran's claims. The order concluded that it "is a final judgment and disposes of all parties and claims."

The Trans filed separate motions for new trial arguing that the trial court erred by granting the summary judgment motion and rendering judgment. Tran argued that

fact issues prevented summary judgment on Buzbee's claims and her counterclaims. Adams Tran argued that the summary judgment order was not final despite the order's contrary language because Buzbee did not move for summary judgment on the claims. The trial court heard argument on the motions for new trial, but the court denied the motions in a written order on December 13, 2023. Concerning Adams Tran's claims, the order stated that "[t]he Court granted Plaintiff's MSJ PRIOR to Adam[s] Tran's Petition in Intervention." This appeal followed.

## Summary Judgment

In a single issue, the Trans contend that the trial court erred by granting the summary judgment motion and by rendering a final judgment. The briefing raises questions about two separate series of transactions: (1) the 2010 loan from Buzbee to Tran; and (2) Buzbee's alleged promise to pay the Trans for their contributions to and work on Buzbee's mayoral campaign. The Trans contend that fact issues exist on the parties' claims concerning the 2010 loan, and Buzbee did not move for summary judgment on Tran's counterclaims and Adams Tran's claims concerning the mayoral campaign.

### A.     Standard of Review

The Court applies a well-established de novo standard to review summary judgment rulings. *See, e.g.*, *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *Oxy USA WTP LP v. Bringas*, 702 S.W.3d 647,

8

654–55 (Tex. App.—Houston [1st Dist.] 2024, pet. denied); *Wheinberg v. Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

## B.    The 2010 Loan

The 2010 loan is the primary focus of this case and the sole focus of Buzbee's claims against Tran. Buzbee argued in his summary judgment motion that Tran owed $750,000 on the principal of the promissory note and $15,000 in forbearance payments. Tran asserted several defenses and counterclaims. Relevant here, she alleged the defense and counterclaim of usury based on the total forbearance payments she was charged or paid in 2017 and 2018. The trial court granted Buzbee's summary judgment motion, awarded him $765,000 for the outstanding principal and forbearance payments, and dismissed Tran's counterclaims.

On appeal, Tran raises numerous challenges to the judgment. But we are most persuaded by her argument that Buzbee did not establish his entitlement to summary judgment on the usury defense and counterclaim, which if successful would entitle her to penalties that could be credited toward the unpaid principal of the note and the unpaid forbearance payment awarded in the judgment. For the reasons discussed below, we conclude that the entire summary judgment order is erroneous.

The parties agree on most of the details concerning the 2010 loan. Buzbee loaned Tran $1,250,000 as part of their professional relationship as attorneys.[1] Buzbee sued Tran in 2014 to collect on the loan, but the parties settled that lawsuit and Buzbee nonsuited it. Tran and Buzbee executed several agreements in 2015 to settle the 2014 lawsuit, including a promissory note and a confession of judgment. The forbearance agreements came later.

Tran executed the promissory note in 2015. She agreed to repay a principal balance of $1,250,000 without interest in equal annual installments of $250,000 for five years from 2016 to 2020. The installments were due by April 17 of each year. The promissory note was secured in part by a confession of judgment consisting of a series of documents which Tran also signed.

Tran timely paid the 2016 installment, reducing the principal on the note to $1,000,000. But she was unable to timely pay the 2017 installment. So the parties entered into the first forbearance agreement in July 2017. This written agreement, which appears in the record, extended the due date of the 2017 annual installment from April 17 to December 1, 2017. Tran agreed to pay Buzbee $10,000 per month for six months to delay the due date. She actually paid Buzbee $70,000 in

---

[1]    Tran mentions on appeal that the parties had some dispute about whether this money was a loan or an investment, but the distinction is immaterial to our analysis considering the parties' subsequent actions in settling the 2014 lawsuit.

10

forbearance payments in 2017 and paid the annual installment on December 5, reducing the principal on the promissory note to $750,000.[2]

Tran was unable to pay the 2018 annual installment. The parties entered into a second forbearance agreement which does not appear in the record.[3] Tran agreed to pay $60,000 in forbearance payments to extend the due date of the 2018 annual installment. She paid at least three forbearance payments of $15,000 each, but the parties dispute whether she paid the final $15,000 forbearance payment. Tran did not pay any further installments on the promissory note.

Buzbee filed the underlying lawsuit and motion for summary judgment to recover the remaining principal of $750,000 and a forbearance payment of $15,000. Tran asserted several affirmative defenses and counterclaims, including usury. Her summary judgment response argued that Buzbee had charged her $130,000 in forbearance payments—$70,000 in 2017 and $60,000 in 2018—to extend the due date of her $250,000 annual installments for those years under the note, and the rate

---

[2]     The parties do not explain why Tran paid Buzbee $70,000 or dispute the apparent overpayment from the $60,000 required under the 2017 forbearance agreement. Thus, we presume that Tran's payment of $70,000 fully complied with her obligations under that agreement.

[3]     To the extent Buzbee disputes the terms of this agreement on appeal, his summary judgment motion included a list showing that "Tran has paid" three forbearance payments of $15,000 each in 2018, and the motion asserted that "one unaccounted forbearance check" remains outstanding "for $15,000." The motion specifically sought to recover the unpaid $15,000 forbearance payment. Therefore, we construe the facts stated above as undisputed unless otherwise noted.

11

of interest to forbear the annual installment was excessive and thus usurious. The trial court disagreed with Tran, granted the motion, and rendered judgment awarding Buzbee $765,000 for the unpaid balance on the note and the 2018 forbearance agreement.

Tran challenges this award on numerous grounds, arguing that Buzbee did not properly plead the confession of judgment, she withdrew her agreement to the confession of judgment, and the summary judgment could not have been based on any other claim (such as breach of the promissory note or forbearance agreements) because Buzbee pleaded a single claim based solely on the confession of judgment. Buzbee disputes these arguments at every turn.

For purposes of our analysis, however, we can assume without deciding that Buzbee established his entitlement to an award of $765,000 for the outstanding principal under the promissory note and the outstanding forbearance payment. *See* TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 47.1 (requiring courts of appeals to issue written opinions that are as brief as practicable but address every issue raised and necessary to final disposition of appeal). Even so, we agree with Tran that the trial court erred by granting summary judgment on her usury affirmative defense and counterclaim. As Tran correctly argues, Buzbee did not meet his summary judgment burden with respect to the defense and counterclaim, and her ultimate success on the counterclaim would entitle her to penalties that could be credited toward the

12

principal and the forbearance payment. Even if Buzbee established his entitlement to the principal under the note and the forbearance payment, he did not meet his burden to show that the award could not be reduced by Tran's counterclaim.

First, we agree with Tran that *Leteff v. Roberts* supports her contention that penalties for usurious interest on a loan can be credited against the principal of the loan. *See* 555 S.W.3d 133 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Buzbee did not directly respond to this argument.

The question presented in *Leteff* was whether an obligor's usury damages could be applied against loans that the obligor had failed to repay. *Id.* at 135. Roberts made 17 separate loans to Leteff, but Leteff only repaid some of them, so Roberts sued Leteff for breach of contract. *Id.* After a bench trial, the trial court concluded that Roberts was liable for usury, but the court refused to award usury damages for loans on which Leteff had fully defaulted. *Id.* at 136.

On appeal, a panel of this Court construed the plain language of Finance Code section 305.001(a-1) as providing that a creditor is liable for usury when the creditor contracts for usurious interest on a loan even if the obligor fails to repay the loan. *Id.* at 138; *see* TEX. FIN. CODE § 305.001(a-1). In reversing the trial court's refusal to award the obligor usury damages on the defaulted loans, we stated, "The law awards an obligor usury damages as 'a boon or a windfall which he is allowed to receive as a punishment to the usurious lender. . . . A successful claim of usury may allow the

13

borrower to avoid a debt he might otherwise owe.'" *Id.* (quoting *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476–77 (Tex. 1988)). Thus, we concluded that usury law "punishes" a creditor for making usurious loans, "even if the result is a windfall" for the obligor. *Id.*

*Leteff* supports Tran's contention that any usury damages she might recover could be credited or offset against the principal of the note and outstanding forbearance payment even if Tran has defaulted on these payments. *See id.* at 138 ("A successful claim of usury may allow the borrower to avoid a debt he might otherwise owe."). Although Tran concedes that $750,000 remains outstanding on the principal of the loan, we are bound by *Leteff* to conclude that a successful prosecution of her usury defense and counterclaim could reduce the principal of the note and any unpaid portion of the forbearance agreement.

Second, we consider whether fact issues exist concerning usury. "A loan is 'usurious' when the interest exceeds the maximum amount allowed by law." *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 715 S.W.3d 383, 385 (Tex. 2025) (quoting TEX. FIN. CODE § 301.002(a)(17)). "Interest" means "compensation for the use, forbearance, or detention of money." *Id.* (quoting TEX. FIN. CODE § 301.002(a)(4)). A forbearance occurs when a debt is due or to become due, and the parties agree to extend the time for payment of the debt. *Domizio v. Progressive Cnty. Mut. Ins. Co.*, 54 S.W.3d 867, 873 (Tex. App.—Austin 2001, pet. denied). A

14

creditor who charges excessive interest is liable to the obligor for three times the excessive amount. *See* TEX. FIN. CODE § 305.001(a)–(a-1). Because usury statutes are penal in nature, they are strictly construed. *Am. Pearl Grp.*, 715 S.W.3d at 385. "When construing a contract under a usury claim, courts presume the parties intended a nonusurious contract." *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *Fin. Sec. Servs., Inc. v. Phase I Elecs. of W. Tex., Inc.*, 998 S.W.2d 674, 677 (Tex. App.— Amarillo 1999, pet. denied)).

A usurious transaction has three elements: a loan of money; an absolute obligation that the principal be repaid; and the exaction of a greater compensation than allowed by law for the use of money by the borrower. *Am. Pearl Grp.*, 715 S.W.3d at 385 (quoting *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982)). In considering the third element, which is the primary focus in this case, the parties dispute both: (1) how much interest could lawfully be charged—10, 18, or 28 percent per year; and (2) how to calculate the amount of interest actually charged to determine whether any charged interest was usurious.

Before discussing the parties' arguments on appeal, it is useful to consider the manner in which they presented their arguments in the trial court. Tran raised usury as a defense and counterclaim in her live counterpetition. Buzbee moved for summary judgment and raised two grounds concerning usury. First, he argued that

15

the promissory note expressly bore no interest, and without interest there can be no usury. Second, he argued that no evidence existed of two elements of usury: an absolute obligation that the principal be repaid, and the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *See id.* Buzbee did not argue that the forbearance payments were not usurious. But Tran's summary judgment response focused her usury arguments exclusively on the forbearance payments, and Tran provided calculations which she contended established that the maximum lawful amount of forbearance payments was $15,625 per year to extend the due date of the $250,000 annual installments in 2017 and 2018. Buzbee filed a reply but did not address these arguments.

The no-evidence ground lacks merit, and Buzbee does not urge it on appeal. Buzbee's motion attached the promissory note, the written 2017 forbearance agreement, and an affidavit concerning the 2018 forbearance agreement. Although the record lacks some terms of the 2018 agreement, such as the length of the extension to pay the annual installment, the parties agree on most of the terms. The parties agree that Tran was charged $130,000 in forbearance payments in 2017 and 2018 to extend each of those years' annual installments under the note. There is no dispute on appeal that the agreements included an absolute obligation by Tran to repay the principal of the note and the forbearance payments. *See id.* Moreover, the terms of these agreements are all the evidence necessary to calculate whether the

16

forbearance payments exacted greater compensation than allowed by law. *See id.* Thus, Buzbee was not entitled to summary judgment on the no-evidence ground.

More importantly, Buzbee's summary judgment briefing did not address whether the forbearance payments were usurious. Buzbee argued only that the promissory note expressly bore no interest. As Tran responds, however, we are not bound by the parties' labels, and "[a] charge which is in fact compensation for the use, forbearance or detention of money is, by definition, interest regardless of the label placed upon it by the lender." *Gonzales Cnty. Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex. 1976); *see also Swank v. Sverdlin*, 121 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Whether an amount of money is interest [under usury statutes] depends not on what the parties call it but on the substance of the transaction.").

The forbearance agreements were executed more than two years after the promissory note, and Buzbee acknowledges that they are separate agreements supported by "separate and additional consideration[.]" The forbearance agreements squarely fit the definition of "interest" in the usury statutes and the caselaw construing them. *See* TEX. FIN. CODE § 301.002(a)(4) ("Interest" means "compensation for the use, forbearance, or detention of money."); *Domizio*, 54 S.W.3d at 873 (stating that forbearance means debt is due or to become due, and parties agree to extend time for payment of debt). Thus, we disagree with Buzbee

that he was entitled to summary judgment merely because the promissory note expressly bore no interest. As the movant, Buzbee had the burden to establish his entitlement to summary judgment, and he did not meet this burden in the trial court. *See Wal-Mart Stores*, 663 S.W.3d at 576.

Buzbee raises additional arguments on appeal. He first argues that because the forbearance agreements were supported by separate and additional consideration— i.e., Buzbee's agreement to not file the underlying lawsuit—the forbearance payments were not interest under usury law. To support this argument, Buzbee relies on *First Bank v. Tony's Tortilla Factory, Inc.*, in which the Texas Supreme Court stated, "Fees which are an additional charge supported by a distinctly separate and additional consideration, other than the simple lending of money, are not interest and thus do not violate the usury laws." *See* 877 S.W.2d 285, 287 (Tex. 1994).

The court distinguished several types of fees which are not interest for usury purposes, such as attorney's fees, commitment fees, prepayment penalties, and brokerage fees. *Id.* Courts need not adhere to how the parties label a fee to determine whether it is a service charge or interest. *Id.* When the evidence conflicts on whether a fee is actually for an additional consideration, the question whether a fee is interest or a service charge is a fact question for the jury. *Id.*; *see also Swank*, 121 S.W.3d at 792 ("A fact question is raised when there is any dispute in the evidence as to whether a charge in addition to interest is actually for an additional consideration.").

18

In *First Bank*, the parties did not dispute the facts and character of the fees: the bank honored checks drawn on insufficient funds in exchange for a fee charged to the customer and the customer's obligation to repay the bank for the advanced funds. 877 S.W.2d at 285, 287. The bank assessed the fee "as a processing fee for the additional work" which the bank was required to complete when processing bad checks; the bank's decision to charge the fee was separate from its decision to honor or dishonor a bad check; the fee was charged in the same amount to all customers regardless of whether the bank honored the check; and the fee bore no relationship to the amount of funds advanced by the bank. *Id.* at 287–88. The court concluded that the "fee was not interest on the amount advanced to cover the bad checks" but was instead "charged for the costs of processing a check drawn on an account with insufficient funds." *Id.* at 288. The court held that the fee was separate and additional consideration other than the lending of money for processing each bad check, and the customer's separate consideration was the implied promise to repay the advance. *Id.*

Here, the forbearance agreements' close relationship to the money loaned under the promissory note distinguishes this case from *First Bank*. Although Buzbee agreed in the forbearance agreements to delay filing the underlying lawsuit, the agreements effectively extended the time to pay the annual installments under the promissory note in 2017 and 2018. As stated above, the promises contemplated by

19

the forbearance agreements precisely fit the definition of "interest" under usury law. *See* TEX. FIN. CODE § 301.002(a)(4); *Domizio*, 54 S.W.3d at 873. To the extent Buzbee disputes the character of the forbearance agreements, this dispute raises a fact issue concerning the true nature of the forbearance agreements. *See First Bank*, 877 S.W.2d at 287; *Swank*, 121 S.W.3d at 792.

Finally, the parties disagree about the proper calculation of interest. Tran argues that the maximum lawful interest rate was 10% per year, and the forbearance charges of $70,000 for 2017 and $60,000 for 2018 were excessive when calculated by the 7.5-month extension of the due date for the $250,000 annual installment for each year. Buzbee responds that if the forbearance payments were considered interest, the applicable interest rate would be either 18% or 28% per year, and excessive interest is determined by aggregating or amortizing the entire $130,000 in forbearance payments charged over the five-year term of the original principal amount of the promissory note. We are not persuaded that either party has produced the correct result.

Although Tran argues that the general maximum rate of 10% interest per year applies to the transaction, she does not respond to Buzbee's contention that the promissory note was executed as part of a commercial loan between attorneys and thus the optional interest rate ceiling is as high as 28% per year. *See* TEX. FIN. CODE §§ 302.001(b), 303.009(a)–(c). Using what she contends is "the well-known formula

20

I=PRT," Tran calculates the maximum lawful interest at $15,605.75 per year to extend the $250,000 annual installment in 2017 and 2018.[4] She provides minimal legal authority supporting these contentions.

Nevertheless, Buzbee had the burden to establish his entitlement to summary judgment on the usury defense and counterclaim. *See Wal-Mart Stores*, 663 S.W.3d at 576. He responds on appeal that after aggregating or amortizing the $130,000 in forbearance payments against the five-year term and principal due under the promissory note, the forbearance payments were "approximately 10% of the principal amount of the Promissory Note." Buzbee relies on Finance Code section 302.001(c):

> To determine the interest rate of a loan under this subtitle, all interest at any time contracted for shall be aggregated and amortized using the actuarial method during the stated term of the loan.

TEX. FIN. CODE § 302.001(c).

The problem with this argument is that Buzbee has made little showing that "the stated term of the loan" refers to the original principal amount under the promissory note rather than the $250,000 annual installment due under the note in both 2017 and 2018. As discussed above, the forbearance agreements are separate agreements that were executed more than two years after the parties executed the

---

[4]    Tran's calculation on appeal differs from her calculation in the trial court by about $20.

21

promissory note. The 2017 forbearance agreement references the promissory note, but it does not mention the principal amount of the note. Rather, it states that:

> Buzbee shall forbear from and agree not to file the Verified Original Petition for Confession of Judgment held in escrow, nor assert his right pursuant to the Default provisions contained in the Note so long as Tran makes the following forbearance payments on the outstanding annual payment due, which was due April 17, 2017:
>
> a.  $10,000 monthly forbearance payment to be paid each month for the months of June through November 2017; and
>
> b.  The $250,000 annual payment on December 1, 2017.

Thus, the only amount listed in the 2017 forbearance agreement is the $250,000 annual installment. The 2018 forbearance agreement does not appear in the record, and its terms concerning interest and incorporation of the promissory note are even less developed in the record.

Even more problematic is that Buzbee did not raise any of these calculations in the trial court, which is a more appropriate forum than an appellate court to resolve disputed calculations about interest under the usury statutes. Based on the sparse briefing of this sub-issue, we are unable to conclude that Buzbee established he was entitled to summary judgment on the usury defense and counterclaim. We therefore must agree with Tran that Buzbee did not meet his summary judgment burden to establish that no fact issues exist and that he was entitled to judgment as a matter of law on the defense and counterclaim of usury, both of which could reduce the recovery he may be entitled to under the note and forbearance agreement.

22

## C.  Campaign Contributions and Work

The parties' remaining arguments concern Tran and Adams Tran's alleged contributions to and work for Buzbee's mayoral campaign. Tran asserted counterclaims for usury, breach of contract, and fraud.[5] Adams Tran intervened and asserted claims against Buzbee for breach of contract, fraud, and quantum meruit. We address Tran's and Adams Tran's claims in turn.

Tran contends that Buzbee did not move for summary judgment on her counterclaims for breach of contract and fraud, and therefore the trial court erred by granting summary judgment on these counterclaims.

A summary judgment cannot grant more relief than that requested in the motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). If a court renders summary judgment on claims not raised in a summary judgment motion, the judgment is subject to reversal. *Lehmann*, 39 S.W.3d at 200; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion."). This is true even if the nonmovant amends her pleadings after the motion

---

[5]  Tran also asserted a counterclaim for quantum meruit on Adams Tran's behalf before Adams Tran filed a petition in intervention asserting this claim. Tran does not argue on appeal that the trial court erred by granting summary judgment on her counterclaim for quantum meruit.

was filed if the movant does not amend or supplement the motion to address claims asserted in the amended pleading. *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). If a trial court renders judgment on all parties' claims, but a defendant only moved for summary judgment on some of the plaintiff's claims but not others, "the judgment is final—erroneous, but final." *Lehmann*, 39 S.W.3d at 200.

We agree with Tran that Buzbee did not move for summary judgment on her counterclaim for breach of contract. Buzbee does not dispute this on appeal.[6] The summary judgment nevertheless dismissed all Tran's counterclaims. Accordingly, we conclude that the trial court erred by granting summary judgment on the breach of contract counterclaim. *See G & H Towing*, 347 S.W.3d at 298; *Lehmann*, 39 S.W.3d at 200.

The question is a closer call regarding Tran's fraud counterclaim. Tran raised fraud as an affirmative defense to the 2010 loan and as a counterclaim regarding the campaign contributions. The summary judgment motion challenged Tran's fraud defense, but the motion did not specifically mention the counterclaim regarding the campaign contributions. However, the motion argued that Tran had no evidence of the elements of her fraud allegations. Buzbee therefore sufficiently challenged

---

[6] Buzbee's brief includes a subheading stating that the summary judgment motion addressed each of Tran's counterclaims, including breach of contract, but he provides no argument concerning the breach of contract counterclaim.

Tran's fraud counterclaim on no-evidence grounds. *See* TEX. R. CIV P. 166a(i). On appeal, Tran's sole argument for reversing her fraud counterclaim is that Buzbee did not move for summary judgment on the claim. She does not alternatively assert that a fact issue exists on the claim. We therefore conclude that the trial court did not err by granting summary judgment on Tran's fraud counterclaim.

Adams Tran, on the other hand, contends that Buzbee did not move for summary judgment on any of the claims asserted in the petition in intervention. We agree. The motion did not mention Adams Tran or move for summary judgment on any of his claims, and Buzbee does not dispute this on appeal.

Rather, Buzbee argues that the trial court's order denying the Trans' motions for new trial expressly stated that it granted the summary judgment motion "PRIOR to Adam[s] Tran's Petition in Intervention." However, the record does not support this statement. Adams Tran filed the petition in intervention on September 5, 2023, and the trial court signed the summary judgment order a week later on September 12, 2023. Thus, we conclude that contrary to the trial court's statement in the order denying the motions for new trial, Adams Tran filed his petition in intervention before the trial court granted the summary judgment motion.

Buzbee further argues that even if Adams Tran timely intervened, the trial court would not have abused its discretion by striking the petition. Buzbee urges this Court not to consider the petition in intervention "because the issues raised would

25

complicate the proceedings due to a multiplication of the issues in the case-at-hand" that will require consideration of "the dealings over the years that Buzbee had with Adams Tran in addition to Tammy Tran." Buzbee also argues that "Adams Tran's interest is still protected outside of this proceeding because he can pursue his separate claim[s] against Buzbee, given that his involvement is different tha[n] [Tran's involvement] because he alleges work done for Buzbee."

Rule 60 provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. "The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right." *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019) (quoting *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (per curiam) (orig. proceeding)). An intervening party has a justiciable interest if he could have brought any part of the same action in his own name or if he would be able to defeat all or part of recovery had the suit been brought against him. *Mass. Bay Ins. Co. v. Adkins*, 615 S.W.3d 580, 602 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quotation omitted). An intervenor need not request the trial court's permission to intervene; rather, the party opposing intervention has the burden to challenge it by filing a motion to strike. *Nghiem*, 567 S.W.3d at 721 (quoting *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)).

"Intervenors are parties to the lawsuit until the trial court grants a motion to strike." *Mass. Bay. Ins.*, 615 S.W.3d at 602.

Buzbee had the burden to move to strike Adams Tran's petition in intervention if he wanted to challenge it, but he did not do so. *See Nghiem*, 567 S.W.3d at 721 (quoting *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657). Buzbee's remaining arguments concern the test which reviewing courts use to determine whether a trial court abused its discretion in ruling on a motion to strike. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. But because Buzbee did not move to strike the petition in intervention, we need not consider the merits of these arguments. *See id.* ("Without a motion to strike, the trial court abused its discretion in striking [the] plea in intervention."); *see also Nghiem*, 567 S.W.3d at 721; *Mass. Bay. Ins.*, 615 S.W.3d at 602.

We hold that the trial court erred by granting summary judgment on Tran's counterclaim for breach of contract and on all Adams Tran's claims. We sustain in part the Trans' sole issue on appeal.

## Conclusion

We affirm the trial court's summary judgment order to the extent it dismissed Tammy Tran and Tammy Tran Attorneys at Law, L.P.'s counterclaims for fraud and quantum meruit. We reverse the remainder of the summary judgment order and remand to the trial court for further proceedings.


David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.