

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00153-CV

———————————————

CHARTER COMMUNICATIONS, INC., Appellant

V.

DAN ALAN LEWIS, Appellee

---

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2015-01451

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellee Dan Alan Lewis sued Appellant Charter Communications, Inc. for damages he sustained when his house flooded during the installation of an internet cable on his property. Based on the jury's verdict, the trial court awarded Lewis damages on his claim for breach of an implied warranty of workmanlike performance, and Charter now appeals. Because the evidence was not legally sufficient to establish that Charter's breach of the implied warranty was a cause of Lewis's damages, we reverse the trial court's judgment and render judgment that Lewis take nothing on his claims.

## Background

Lewis sued Charter[1] for breach of contract, breach of the implied warranty of good and workmanlike performance, and violation of the Texas Deceptive Trade Practices Act, as well as several other claims that were dismissed on summary judgment. Lewis alleged that the flooding in his home resulted from the use of a water spigot on the side of his home by an employee of Charter's subcontractor while that employee was burying an internet cable. Lewis had previously removed the spigot's handle to prevent unauthorized use of his water. Nevertheless, the subcontractor's employees managed to use the water spigot. Lewis sought to recover

---

[1]Charter is the successor in interest to Time Warner Cable (TWC), which Charter purchased in 2016. Lewis purchased internet services from TWC, and TWC installed the cable and retained a subcontractor to bury it. For simplicity, we refer to both Charter and TWC as Charter.

the costs to repair the damage to his home and lost income; a symphony pianist and cellist, Lewis also taught music out of his home but found it difficult to do so during the repair process.

Lewis testified that a Charter employee installed the internet cable on his property on July 8, 2013, but told him another crew would come by in a few days to bury it. According to Lewis, on July 10, 2013, he walked into his kitchen and found it and his utility room "under about an inch of water," and water then migrated to other parts of the house. Lewis stated that in following the flow of water to his garage, he found the subcontractor's vehicle in his driveway, alerting him for the first time to the crew's presence.

The jury found that Charter had breached an implied warranty of workmanlike performance, which was a producing cause of Lewis's damages, and it awarded him $15,000 for repair costs, $25,000 for lost income, and attorney's fees. The jury further found that Charter did not fail to comply with its agreement with Lewis and did not engage in any unconscionable action or course of action that caused Lewis's damages. The trial court signed a final judgment in accordance with the jury's verdict.

**Discussion**

In Charter's first issue, it argues that the evidence was legally insufficient to support the jury's finding that Charter's conduct was a producing cause of Lewis's damages because Lewis failed to show a causal link between Charter's alleged wrongful conduct and Lewis's damages.

3

## I.    Standard of Review

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

## II.    Causation Evidence

Texas law recognizes an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner, and an action for breach of this warranty may be brought under the common law or under the DTPA. Tex. Bus. & Com. Code Ann. § 17.50(a)(2); *Nghiem v. Sajib*, 567 S.W.3d 718, 719 (Tex. 2019). "The implied warranty of good and workmanlike manner provides that a service will be performed in a skillful and workmanlike manner," which is "'that quality of work performed by one who has the knowledge, training, or experience necessary for the

successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.'" *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 823 (Tex. App.—Dallas 2003, pet. denied) (quoting *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987)).

To prove his breach of implied warranty claim, Lewis was required to prove cause in fact. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (stating that producing or proximate cause was an element of all of the plaintiff's claims, including breach of warranty, and cause-in-fact is a part of both producing cause and proximate cause); *see also Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 223 (Tex. 2010) (noting that "the producing cause inquiry is conceptually identical to that of cause in fact"). "Cause in fact means that the defendant's conduct was a substantial factor in bringing about the injury which would not otherwise have occurred." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995); *cf. GB Tubulars, Inc. v. Union Gas Operating Co.*, 527 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (stating in the context of an express warranty claim that the claim requires proof of producing cause, defined as "a cause that was a substantial factor in [the] bringing about of an occurrence, and without which the occurrence would not have occurred").

The only evidence addressing causation came from Lewis's testimony.[2] Lewis testified that he had no flooding in his house when he ate breakfast on the morning of

---

[2]Charter argues in its third issue that the trial court's decision to allow Lewis, a non-expert witness, to testify about the cause and origin of the flooding in his home

5

July 10, 2013. He further testified that when he discovered the flooding later, he noticed for the first time that the subcontractor's crew was already there working. Lewis concluded that the crew caused the flooding because "the water appeared while the crew was doing their work." The flooding was ongoing while the crew was working, "[a]nd when they stopped using the spigot, the water no longer was coming into the house." Lewis's testimony provided no evidence, however, of when the flooding began or of when the crew began its work, other than that it happened sometime after breakfast.

Lewis identified the water's entry point into the house. He could see water coming into the utility room from the wall on which the spigot was attached outside, and the water was coming from the area of the wall where the spigot is located. He then went outside, saw the crew, and noticed a boring tool and a nozzle lying on the ground by the spigot. The subcontractor's employee told Lewis that the crew had used the spigot to obtain water for the power spray that they used to bury the cable. Lewis had not authorized the crew's use of the spigot and had not been asked for permission to use it. Importantly, no evidence was offered about how the spigot was used or how any equipment was utilized in connection with the use of the spigot.

---

probably caused the rendition of an improper judgment. Because we hold that even considering Lewis's testimony, the evidence is insufficient to establish causation, we need not address Charter's third issue. *See* Tex. R. App. P. 47.1.

6

Lewis testified that he had never had any prior water damage or water leaks in his home. He stated that he had used the spigot a few times before and had never had any issues or any flooding from using the spigot. Lewis did not testify to any water leaks or flooding resulting from unauthorized use of the spigot before the handle's removal. He also denied experiencing any further water damage or flooding incidents in his home after that day. Asked if he had any leaks from the pipes in the walls in his utility room, he stated, "I don't believe that pipe has any problem with it whatsoever. It's—it's exterior to that where the—where the pipe was damaged." Lewis admitted that after the flooding incident, he did not call a plumber to investigate the cause of the flooding.

Lewis's testimony was not enough to identify the unauthorized use of the spigot—the alleged breach of the implied warranty in this case—as the cause of the flooding. Lewis did not discover, for example, that the spigot was not properly connected to the pipe inside the wall. *Contra Melody Home*, 741 S.W.2d at 351 (upholding finding of breach of implied warranty when the plaintiffs discovered that the sink in their prefabricated home had not been connected to the drain in one of the interior walls, resulting in a continual leak that caused damage to the home, and attempted repairs by the seller caused additional damages). Lewis's own testimony was that there were no problems with the pipe or spigot before or after that day. There was no testimony that the way the subcontractor used its tools to allegedly create pressure forced water into Lewis's house. Assuming that the subcontractor's

7

turning on the spigot resulted in the flooding, Lewis produced no evidence of *how* merely turning on the spigot on the outside of the house was a substantial factor in causing the flooding inside of the house and without which the flooding would not have occurred. Certainly, the location and the timing of the flooding created a *suspicion* that there was a connection of some kind between the flooding in Lewis's home and the subcontractor's use of water in burying the cable. Suspicion, however, is not evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."). In short, Lewis merely proved an unexplained temporal connection between two events. With no evidence showing a connection between those two events—the unauthorized use of the spigot on the outside of the house and the flooding on the inside of the house—Lewis's proof is no evidence that Charter's alleged breach of the implied warranty by using the spigot was a substantial factor in causing the flooding and without which the flooding would not have occurred.

Because the evidence is legally insufficient to support the jury's finding that Charter's breach[3] of the implied warranty of good and workmanlike services caused

---

[3]The parties disagreed about Charter's liability for breach of the implied warranty based on the conduct of its subcontractor. We need not and do not reach that issue. *See* Tex. R. App. P. 47.1.

Lewis's damages, we sustain Charter's first issue. This issue is dispositive; we therefore need not consider Charter's remaining issues.[4] *See* Tex. R. App. P. 47.1; *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003) (op. on reh'g).

## Conclusion

Having sustained Charter's first issue, we reverse the trial court's judgment, and we render judgment that Lewis take nothing on his claims.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered: December 19, 2019

---

[4]Charter argues in its remaining issues that the evidence was factually insufficient to support the jury's causation finding (second issue), that legally and factually insufficient evidence supported the jury's finding when Lewis presented no evidence of the standard of performance required of Charter (fourth and fifth issues), and that the jury returned a fatally inconsistent verdict when it found that Charter did not breach its contract with Lewis but that Charter breached its implied warranty, given that both questions included a definition of "good and workmanlike manner" (sixth issue).

9