**Affirmed and Memorandum Opinion filed September 16, 2025.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00082-CV

**COURTENAY PARIS, IN HER PERSONAL CAPACITY, AND IN HER OFFICIAL CAPACITY AS CHAIRPERSON ON BEHALF OF DECRIMINALIZE ELGIN, A NONPROFIT, UNINCORPORATED POLITICAL ACTION COMMITTEE, Appellant**

**V.**

**THE STATE OF TEXAS; CITY OF ELGIN; THERESA Y. MCSHAN, MAYOR OF ELGIN; SUE BRASHAR, MAYOR PRO TEM OF ELGIN; JOY CASNOVSKY, ARTHUR GIBSON III, YALECIA LOVE, CHUCK SWAIN, MATTHEW CALLAHAN, AL RODRIGUEZ, AND FOREST LEE DENNIS, MEMBERS OF THE CITY COUNCIL OF ELGIN; THOMAS MATTIS, CITY MANAGER OF ELGIN; AND CHRIS NOBLE, CHIEF OF POLICE OF ELGIN; IN THEIR OFFICIAL CAPACITIES, Appellees**

**On Appeal from the 21st District Court**
**Bastrop County, Texas**
**Trial Court Cause No. 2621-21**

### MEMORANDUM OPINION

Courtenay Paris spearheaded a campaign that culminated in City of Elgin

voters approving an ordinance that prohibited local law enforcement from issuing citations or making arrests for misdemeanor marijuana possession. After the State of Texas sued Elgin and several of its officials to declare the ordinance preempted by state law, Paris intervened to defend it and filed a plea to the jurisdiction seeking to dismiss the State's petition. But the trial court struck Paris's petition on the State's motion and, on same day, granted the State's and Elgin's joint motion for entry of a consent decree and for final judgment. Paris now complains that the trial court should have decided her jurisdictional plea before the State's motion to strike, that the trial court erred by striking her petition, and that the trial lacked subject-matter jurisdiction over the State's petition. Because we hold that the trial court acted within its discretion by striking Paris's petition when it did and that Paris lacks standing to appeal matters other than her struck petition, we affirm.

## BACKGROUND

Paris is a resident of the City of Elgin and the Chairperson for Decriminalize Elgin, an unincorporated political action committee. In the Spring of 2022, she "played a central role in initiating, organizing[,] and circulating a citizen-initiative petition" to adopt an ordinance prohibiting Elgin police officers from issuing citations or making arrests for Class A and B misdemeanor possession of marijuana offenses. Similar ordinances have been adopted by other Texas cities but challenged by the State on preemption and ultra vires grounds.[1]

The initiative eventually made its way before the Elgin City Council, which opted to call an election and submit it for voter approval. Elgin voters passed the initiative at an election in November 2022, and it "was subsequently published in

---

[1]    *See State v. City of Austin*, 714 S.W.3d 247, 249 (Tex. App.—15th Dist. 2025, pet. filed) (holding State alleged viable preemption and ultra vires claims); *State v. City of San Marcos*, 714 S.W.3d 224, 230–31 (Tex. App.—15th Dist. 2025, pet. filed) (same).

the City's Code of Ordinances as required by the City's Charter."[2]

Later, the State of Texas, represented by the Office of the Attorney General, sued Elgin and some of its officials for declaratory and injunctive relief. The State alleged that the Ordinance is void because it is preempted by Section 370.003 of the Local Government Code and unconstitutional under Article XI, Section 5 of the Texas Constitution.[3]

Paris then filed a petition in intervention as a "Defendant-Intervenor," both in her personal capacity and in her official capacity as Chairperson for Decriminalize Elgin. Paris claimed to have a justiciable interest in the State's suit because, as it relates to the Ordinance, Elgin had taken a "legal position" that was "diametrically adverse" to her "interests," was likely to "align itself with the interests" of the State, and could "reasonably be expected … to overtly or covertly collude" with the State to "acquire an outcome … that serves only their mutually shared interests." Paris based her allegations on statements made by Elgin's Police Chief and City Manager at a city council meeting after the Ordinance was adopted opining that it was unlawful. The only relief Paris sought was dismissal of the State's suit for the reasons set out in a plea to the jurisdiction, which she filed the same day.

In her plea, Paris argued that the State had sustained no legal injury, and thus lacked standing, because the Ordinance had "never been applied or enforced," nor would it be enforced in the future, considering the statements made by Elgin's

---

[2]  *See* ELGIN, TEX., REVISED CODE OF ORDINANCES ch. 24, art. V (Apr. 7, 2023 Supp.); ELGIN, TEX. CITY CHARTER, art. IX, §§ 14(A), 15.

[3]  TEX. LOC. GOV'T CODE § 370.003 (prohibiting municipality and its police department from "adopt[ing] a policy under which the entity will not fully enforce laws relating to drugs, including Chapter 481" of the Health and Safety Code, which prohibits possession of marijuana); TEX. CONST. art. XI, § 5(a) (prohibiting ordinances from containing "any provision inconsistent with … the general laws enacted by the Legislature").

Police Chief and City Manager. She also contended that the Attorney General did not have the power and capacity to file the lawsuit on behalf of the State in district court.[4]

The State moved to strike Paris's petition. It argued that she lacked a justiciable interest in the suit and that her participation would unnecessarily complicate the litigation, in part because the State and Elgin had agreed to settle the case, as reflected by their joint motion for entry of a consent decree and for final judgment, filed the next day. Paris objected that the consent decree, which asked the trial court to order that the Ordinance is void, was improper because there was no dispute between the State and Elgin, since Elgin officials had previously "disavowed the validity of the Initiative ordinance." And alluding to her plea to the jurisdiction, Paris accused the State and Elgin of "transparently colluding to induce [the] Court to enter a plainly unconstitutional 'advisory opinion' so that the Attorney General can 'save face' after having filed this frivolous lawsuit as a purely political stunt." Responding to Paris's plea, the State argued that it sustains an injury when a preempted, unlawful ordinance is adopted, and that the Attorney General's authority to bring suits on behalf of the State to enforce its laws is well established.

The trial court conducted a hearing on the State's motion to strike but not on Paris's plea to the jurisdiction. That prompted Paris to file a motion asking the trial court to abate its ruling on the motion to strike until after it decides the jurisdictional issues raised in her plea to the jurisdiction. The trial court instead granted the State's and Elgin's joint motion for entry of a consent decree and for final judgment and the State's motion to strike Paris's petition in intervention, both

---

[4]     Paris raised the same argument in a motion to show authority under Texas Rule of Civil Procedure 12.

4

on the same day. Paris appeals.

## DISCUSSION

We first address Paris's two intervention-related issues, followed by her remaining issues.

## I. The Petition in Intervention

Paris argues that the trial court erred by striking her petition because she has a justiciable interest in defending it against the State's legal challenges. Paris also disagrees with the timing of the trial court's order striking her petition. She contends that the trial court should have addressed the State's motion to strike only after first deciding her plea to the jurisdiction. Neither argument has merit.

### A. The order striking the petition

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. "The rule authorizes a party with a justiciable interest in a pending suit to intervene as a matter of right." *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008). The justiciable interest requirement is "of paramount importance" because it "protects pending cases from having interlopers disrupt the proceedings." *Id.* at 155. A court entertaining a motion to strike "may also consider whether the intervention will complicate the case by an excessive multiplication of the issues and how important it is to effectively protect the intervenor's interest." *Nghiem v. Sajib*, 567 S.W.3d 718, 721 n.17 (Tex. 2019). A "person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). A trial court has broad

discretion in determining whether to strike an intervention, but it abuses its discretion if "(1) the intervenor meets the above test, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest." *Id.*

The trial court could have struck Paris's petition because she lacked a justiciable interest in the State's suit, one of the grounds upon which the State moved to strike.

To meet her burden to show a justiciable interest, Paris directs us to a pair of voter-standing cases that stop short of supporting her position. *See Blum v. Lanier*, 997 S.W.2d 259 (Tex. 1999); *Glass v. Smith*, 244 S.W.2d 645 (Tex. 1951). In *Blum*, the Texas Supreme Court reaffirmed what it decided in *Glass*: "Citizens who exercise their rights under initiative provisions act as and become in fact the legislative branch of the municipal government," and so "the signers, as sponsors of the initiative, have a justiciable interest in seeing that their legislation is *submitted to the people for a vote*." *Blum*, 997 S.W.2d at 262 (emphasis added); *Glass*, 244 S.W.2d at 648, 652–53. Paris acknowledges that this case does not involve any expectation in seeing the initiative submitted for a vote—because the vote already occurred and the initiative passed—but she argues that the justiciable interest possessed by initiative sponsors in seeing a vote occur "cannot persuasively be distinguished from a justiciable interest" in "*defend[ing] the validity of legislation* after" it has been approved by the voters. We disagree for several reasons.

*First*, Paris invites us to extend Texas law to accommodate her interest, but we are in no position as an intermediate appellate court to read more into *Blum* and *Glass* than what is there, nor do we see any indication that the Texas Supreme Court has signaled intent to recognize a justiciable interest under circumstances

6

like those here.[5] Paris observes that the Supreme Courts of both California and Montana have held that initiative sponsors may intervene to defend a law's validity, but we are not persuaded by those out-of-state courts.[6] The California Supreme Court permits an initiative sponsor to intervene in the unique circumstance "when the public officials who ordinarily defend the measure or appeal such a judgment decline to do so," but that was not the case here.[7] Two officials expressed opinions critical of the Ordinance after it was passed and officially "on the books," but that does not mean the City of Elgin would not, or could not, defend the Ordinance in court.[8] The Montana Supreme Court apparently adopted Ninth Circuit precedent with little analysis.[9]

*Second*, we disagree with Paris that the protected interest of an initiative sponsor *pre*-election "cannot persuasively be distinguished" from a sponsor's interest *post*-election. Whereas a citizen sponsor of an initiative possesses an interest distinct from the public *before* the initiative is put to a vote—having

---

[5] The Court declined to reach the issue in *Quick v. City of Austin*, 7 S.W.3d 109, 126 (Tex. 1998).

[6] *See Perry v. Brown*, 265 P.3d 1002, 1006–07 (Cal. 2011); *Sportsmen for I-143 v. Mont. Fifth Jud. Dist. Ct.*, 40 P.3d 400, 402–03 (Mont. 2002).

[7] *Perry*, 265 P.3d at 1006–07 ("[B]ecause it is essential to the integrity of the initiative process embodied in [the California constitution] that there be someone to assert the state's interest in an initiative's validity on behalf of the people when the public officials who normally assert that interest decline to do so, … we conclude that California law authorizes the official proponents, under such circumstances, to … assert the state's interest in the initiative's validity.").

[8] *See City of Austin v. Quick*, 930 S.W.2d 678, 683 (Tex. App.—Austin 1996) ("[T]he Coalition argues that past hostilities with the City demonstrate that it is presumably incapable of protecting the Coalition's interests at trial" but "the relevant inquiry is whether the City could have effectively represented the Coalition's interests *at the time of trial*."), *aff'd*, 7 S.W.3d 109 (Tex. 1998); *see also Robinson v. Parker*, 353 S.W.3d 753, 755–56 (Tex. 2011) (disagreeing that documents showed city noncompliance with enacted proposition); *see also Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 501 (Tex. 2024) (observing presumption that public officials act with regularity, good faith, and legality in discharging official duties).

[9] *See Sportsmen for I-143*, 40 P.3d at 403.

essentially assumed the role of a legislator—the sponsor occupies a position no different than anyone who votes in favor of the initiative and has an interest in its continued validity *after* adoption.[10] We are not alone in drawing the distinction. Federal courts, including the United States Supreme Court, have held that initiative proponents lack Article III standing to defend a measure after adoption.[11] We do not suggest there could *never* be circumstances in which an initiative sponsor has a justiciable interest post-election, but we do not have facts before us justifying a foray into such questions.

Paris's other arguments are unpersuasive. She contends that the State confused the justiciable interest required by Rule 60 with the interest needed to show constitutional standing, but we see nothing in the State's motion to strike to support that characterization. At the hearing on its motion to strike, the State did describe its motion as "jurisdictional," but the trial court simply noted that it had already decided to take up the motion to strike first.

Citing a provision in the Uniform Declaratory Judgments Act, Paris argues that she should have been a party to the suit because she has an "interest that would

---

[10]    *See, e.g., In re Hotze*, 627 S.W.3d 642, 648 (Tex. 2020) (Blacklock, J, concurring) (stating individual legislators lack standing to sue to vindicate Legislature's institutional prerogatives against executive-branch encroachment); *In re Hotze*, 2008 WL 4380228, at *2 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("[B]ecause Proposition 2 was submitted to, and adopted by, the voters, and such adoption was reflected in the City records, the appellees had not alleged any distinct injury by virtue of their sponsorship activities, but, instead, were essentially equal to all other persons who had voted for Proposition 2 and wished to ensure its subsequent enforcement.").

[11]    *See Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) ("But once Proposition 8 was approved by the voters, the measure became 'a duly enacted constitutional amendment or statute.' Petitioners have no role—special or otherwise—in the enforcement of Proposition 8."); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) ("[T]his Court [has] [n]ever identified initiative proponents as Article-III-qualified defenders of the measures they advocated."); *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705–06 (6th Cir. 2017) ("Although initiative sponsors have an interest in having the initiatives they support appear on the ballot, their interest stops there.") (citation omitted).

be affected by the" State's requested declaration,[12] but she does not argue, nor does she direct us to any authority providing, that the interest in Section 37.006(a) is of a different kind, with a lower threshold, than the justiciable interest required for intervention.[13]

Looking to the federal rules for help, Paris says the Texas Supreme Court "has indicated" that the consideration in Federal Rule of Civil Procedure 24(a) whether an intervenor's interest would be "adequately represent[ed]" by existing parties is "implicitly included" in Rule 60.[14] But it was the Fifth Circuit's timeliness test for intervention that the Texas Supreme Court thought "appropriate here," not the "adequate representation" component of Rule 24(a), which has no express counterpart in Rule 60. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 726 n.7 (Tex. 2006).

The trial court did not abuse its discretion by granting the State's motion to strike.

## B.     The timing of the order striking the petition

Observing that trial courts are supposed to decide subject-matter jurisdiction

---

[12]     *See* TEX. CIV. PRAC. & REM. CODE § 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties.").

[13]     We need not separately analyze the allegations contained in Paris's petition—that she has a justiciable interest because Elgin had taken a "legal position" that was "diametrically adverse" to her interest and might "collude" with the State to "acquire an outcome" that was contrary to her interest—because they do not show her interest was *justiciable*, only that her arguments were *different*. New or different arguments do not give a person a right to intervene in someone else's case.

[14]     *See* FED. R. CIV. P. 24(a)(2) (requiring court to "permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

at the "earliest opportunity,"[15] Paris next argues that the trial court erred by granting the State's motion to strike without first considering her plea to the jurisdiction, which challenged the trial court's subject-matter jurisdiction over the State's suit. No doubt, subject-matter jurisdiction is "essential to a court's power to decide a case,"[16] but it would have made neither sense nor efficiency for the trial court to address Paris's defenses first and run the risk of granting dispositive relief to someone who has no business participating in a lawsuit that the only other parties have agreed to settle. On this the Texas Supreme Court agrees: "Because interventions by uninvited participants have potential for disrupting pending suits, trial courts should rule on motions to strike interventions before considering other matters such as severance."[17] In exercising its discretion to manage its docket, the trial court could reasonably have determined that its "earliest opportunity" to consider Paris's subject-matter jurisdiction defense was not until after first deciding whether Paris was an interloper who should be struck from the suit.[18]

Nor is this a situation where the trial court never decided whether it had subject-matter jurisdiction. True, the trial court did not decide Paris's plea to the jurisdiction *before* the State's motion to strike, but it did sign the order striking Paris's petition *on the same day* it signed the final judgment. As the State observes, by signing the final judgment, the trial court implicitly found that it had subject-

---

[15]   *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[16]   *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).

[17]   *In re Union Carbide Corp.*, 273 S.W.3d 152, 156 (Tex. 2008) ("The trial court abused its discretion in failing to first rule on the motion to strike."); *see Miranda*, 133 S.W.3d at 229 (explaining that "the Texas civil procedural scheme entrusts many scheduling and procedural issues to the sound discretion of the trial court," including Rule 60, which "does not provide explicit guidelines for the scheduling of a hearing").

[18]   *See Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) (stating trial court is "given wide discretion in managing its docket"); *see also* TEX. R. CIV. P. 84 (permitting trial court to hear defendant's pleadings "in such order as may be directed by the court," excluding only special appearances and motions to transfer venue).

matter jurisdiction over the State's suit against Elgin.[19]

We overrule Paris's issues involving the State's motion to strike.

## II. The District Court's jurisdiction

In her remaining two issues, Paris argues that the trial court lacked subject-matter jurisdiction to sign the final judgment because the State lacked standing to sue and the Attorney General lacked capacity to represent the State in district court. Paris lacks standing to raise these issues on appeal.

Standing matters just as much on appeal as it does in the trial court. "Texas courts have long held that that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). This applies no less to intervention appeals—"the prospective intervenor must establish its standing to present its argument on appeal." *State v. Naylor*, 466 S.W.3d 783, 791 (Tex. 2015).[20] Although an intervenor certainly has standing to appeal an interlocutory order striking her petition once it merges into a final judgment,[21] it does not necessarily follow that the intervenor may also raise issues related to the merits and other matters without showing a distinct injury flowing from the related order or judgment.[22]

We have affirmed the trial court's order striking Paris's petition because she

---

[19] *See In re Kirby*, 2021 WL 5500524, at *2 (Tex. App.—Tyler Nov. 23, 2021, orig. proceeding); *cf. Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).

[20] *See Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008) ("[A]n intervenor seeking to appeal, like any other party, must fulfill the requirements of Article III of the Constitution before it can continue to pursue an action in the absence of the party on whose side intervention was permitted.").

[21] *Eichner v. Dominguez*, 623 S.W.3d 358, 360–61 (Tex. 2021).

[22] *See, e.g., Brown v. Freed*, No. 03-21-00556-CV, 2023 WL 9007331, at *2–5 (Tex. App.—Austin Dec. 29, 2023, pet. denied).

lacks a justiciable interest in the State's suit seeking to declare the Ordinance void. Paris had a second opportunity on Reply to identify a distinct injury, but she did not do so. Absent a distinct injury, she is positioned no differently than any other concerned citizen who voted in favor of the Ordinance, and so she lacks standing to assert her standing and capacity challenges against the State.[23]

In any event, we recently observed in a similar suit filed by the State against a different city that the "State has an intrinsic right to enforce its own laws and, therefore, standing to bring" its suit.[24] And it is well established that the Attorney General is authorized to prosecute ultra vires suits like this one in district court.[25]

We overrule Paris's remaining issues.

## CONCLUSION

Having overruled Paris's issues, we affirm the trial court's judgment.


/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[23] *See Smith v. City of Garland*, 523 S.W.3d 234, 239 (Tex. App.—Dallas 2017, no pet.) (intervenor limited to challenging ruling on intervention); *Jack Jones Hearing Ctrs., Inc. v. State Comm. of Exam'rs*, 363 S.W.3d 911, 914 (Tex. App.—Austin 2012, no pet.) (no standing to appeal); *see also Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts.").

[24] *City of Austin*, 714 S.W.3d at 253 (citing *In re State*, 711 S.W.3d 641, 647 n.4 (Tex. 2024)).

[25] *See State*, 711 S.W.3d at 647; *Hollins v. State*, 620 S.W.3d 400, 410 (Tex. 2020).